COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Bumgardner and Lemons
Argued at Salem, Virginia


DIANE L. MORAN
                                         OPINION BY
v.    Record No. 2543-97-3        JUDGE SAM W. COLEMAN III
                                        MARCH 30, 1999
CURTIS E. MORAN, JR.


         FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
                   Martin F. Clark, Jr., Judge

          Stacey W. Moreau (Williams, Morrison, Light
          and Moreau, on briefs), for appellant.

          Gregory P. Cochran (Caskie & Frost, P.C., on
          brief), for appellee.


     Diane Moran, wife, and Curtis Moran, husband, appeal the

equitable distribution of their marital assets.  Wife contends

the trial court erroneously classified her separately owned

rental house, known as the "Berkshire house," as hybrid

property, and unfairly distributed the marital portion of

husband's defined contribution pension plan.  On cross-appeal,

husband contends the trial court erred in refusing to award him

the passive income earned on his separate share of the defined

contribution pension plan, and in assigning him the total debt

remaining on a loan secured by the pension plan.  We hold that

the trial court did not err in classifying the Berkshire home as

hybrid property and did not err in assigning husband the debt

secured by the pension plan.  However, we hold that the court erred by failing to classify as separate property the passive income earned in the husband's pre-marital contributions to the pension plan.  Accordingly, we reverse and remand for reclassification, valuation and distribution of the pension plan.

### I.  BERKSHIRE HOUSE

In 1983, when the parties married, wife owned the Berkshire house that she had purchased in 1978 for $27,900.  According to husband's estimate, at the date of marriage, wife owed between $24,000 to $25,000 on the deed of trust, giving her $2,900 to $3,900 equity in the Berkshire house.  The Berkshire house was their marital home from 1983 to 1990, at which time they purchased another home and leased the Berkshire property.  When the parties separated, the fair market value of the Berkshire home was $58,500.  The parties still owed $18,533 on the original deed of trust and $11,079 on a home equity loan, resulting in net equity of $28,888.  During the marriage, the parties spent $30,000 of marital funds renovating the Berkshire property and used marital funds to make the monthly payments on the deed of trust.

Property that is acquired by either party before the marriage is separate property, Code § 20-107.3(A)(1)(i), subject to being transmuted into hybrid property -- that is, part

-

marital and part separate -- (1) by virtue of an increase in value due to personal efforts or contributions of marital funds, Code § 20-107.3(A)(3)(a); or (2) by having been commingled with marital funds when the marital funds can be retraced, Code § 20-107.3(A)(3)(d); or (3) by being commingled with marital property into newly acquired property when the separate property can be retraced. Code § 20-107.3(A)(3)(e). Thus, the Berkshire property would be wife's separate property unless the property was converted into marital or hybrid property by virtue of marital contributions increasing the value of the property or by commingling marital and separate funds.

Husband claims that the expenditure of $30,000 of marital funds to renovate the Berkshire property transmuted the property to a hybrid classification. Code § 20-107.3(A)(3)(a) provides "the increase in value of separate property during the marriage [is] . . . marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases." The expenditure of marital funds in connection with a separate asset does not, without more, justify classifying an increase in value or appreciation of that asset as marital rather than separate property. Martin v. Martin, 27 Va. App. 745, 753-58, 501 S.E.2d 450, 454-56 (1998). In the context of renovations, the term "'contribution of marital property' within the meaning of the statute

-

contemplates an improvement, renovation, addition or other contribution which, by its nature, imparts intrinsic value to the property and materially changes the character thereof." Id. at 756, 501 S.E.2d at 455. The increase in value of separate property becomes marital if the expenditure of marital funds or a married party's personal efforts generated the increase in value. The significant factor, however, is not the amount of effort or funds expended, but rather the fact that value was generated or added by the expenditure or significant personal effort. See Hart v. Hart, 27 Va. App. 46, 65, 497 S.E.2d 496, 505 (1998) (stating that marital contribution includes the "value of improvements to the property after the marriage from other than non-marital funds").

During the marriage, the house appreciated in value to $58,500 (from an original 1978 purchase price of $27,900). During that time, the Morans spent $30,000 of marital funds to renovate the Berkshire house. However, the evidence failed to prove the extent to which the "contributions" of marital funds to the renovations caused any of the home's appreciation in value. Absent evidence that the renovations contributed to a specific increase in value, the husband failed to satisfy his initial burden of proof under Code § 20-107.3(A)(3)(a) and to that extent the appreciation cannot be classified as marital property. The husband's evidence, which proved the expenditure

-

of $30,000 of marital funds for renovating the Berkshire home, is not, alone, sufficient to support classifying any specific portion of the increase in value as marital property.

In classifying the Berkshire property, we next consider the expenditure of marital funds to pay the original deed of trust. Because marital funds were used to pay the mortgage, the trial court did not err in classifying the Berkshire property as hybrid, that is, part marital and part separate.

> When marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, such contributed property shall retain its original classification.

Code § 20-107.3(A)(3)(d). The evidence showed that the Morans used marital funds to pay the monthly mortgage obligation for the Berkshire house. Thus, they commingled marital funds with separate property, resulting in the presumption that the marital funds were transmuted to separate property. However, to the extent the marital funds reduced the principal of the mortgage, that amount is traceable from the separately acquired equity. See Hart, 27 Va. App. at 65, 497 S.E.2d at 505 (stating that the

-

*Brandenberg* formula for determining marital contribution

includes amount of marital funds expended in the reduction of

mortgage principal).  The "acquisition" of property refers to

the process of purchasing and paying for property.  See Brett R.

Turner, Virginia's Equitable Distribution Law:  Active

Appreciation and the Source of Funds Rule, 47 Wash. & Lee

L. Rev. 879, 899-905 (1990) ("property is 'acquired' under the

source of funds rule whenever real economic value is created")

(citing Harper v. Harper, 448 A.2d 916, 929 (Md. 1982); Wade v.

Wade, 325 S.E.2d 260 (N.C. Ct. App. 1985)).  Here, the husband's

evidence proved that at the time of marriage, the unpaid balance

on the mortgage was $24,000 to $25,000, that during the marriage

the mortgage was paid with marital funds, and at the date of

separation the unpaid balance on the mortgage was $18,533.  The

husband's evidence proved a reduction in mortgage principal of

approximately $6,000 through the expenditure of marital funds.

Therefore, in paying the mortgage obligation with marital funds,

the Morans acquired value in the Berkshire property.  Although

the husband failed to offer evidence sufficient to prove the

"value" of the renovations, the husband did present sufficient

evidence to establish that a portion of the equity in the

Berkshire property could be traced to marital funds.

Accordingly, the trial court did not err in classifying the

Berkshire house as hybrid property, part separate and part marital.[1]

## II.  SAVINGS AND INVESTMENT PLAN

Before and during the marriage, husband participated in his employer's defined contribution pension plan (Savings and Investment Plan or "SIP"), valued at $198,000 on the date of separation.  Within the SIP, and throughout the course of its existence, husband invested his contributions into three separate funds, each with varying degrees of risk and rates of return.  Husband had authority to direct the disposition of his investments within the three funds; however, he testified that he transferred investments among the funds only two or three times during the course of the twelve-year marriage.  The value of the SIP plan at the time of marriage was $17,489.  The trial court classified the pre-marital contribution of $17,489 as husband's separate property and awarded him that amount.  Husband contends the trial court erred by not awarding him any of the passive increase in value on the $17,489 separate property investment.

---

[1]Although the trial court did not determine the values of the marital and separate shares in the Berkshire house, as required by Code § 20-107.3, neither party challenges the court's failure to do so.  Nor does the husband challenge the court's allotment of the entire asset to the wife.

_

Code § 20-107.3(A)(1)(iv) provides that "[i]ncome received from separate property during the marriage is separate property if not attributable to the personal efforts of either party." Accordingly, passive income earned on pre-marital contributions to a defined contribution pension plan is separate property. See Mann v. Mann, 22 Va. App. 459, 470 S.E.2d 605 (1996).

We hold that the trial court erred by failing to determine the amount of income derived from husband's pre-marital separate investment of $17,489 in the pension fund. Husband's expert witness calculated the amount that $17,489 would have earned or increased in value during the twelve years of marriage using various scenarios depending on which fund or funds contained the $17,489.[2] If the $17,489 were invested solely in the fund that performed the poorest over the twelve years of marriage, its value would have increased in twelve years to $61,978 at the time of separation. Thus, husband presented the irrefutable evidence that the $17,489 separate property had earned income or increased in value by at least $44,489. On the other hand, had

_____

[2]Husband was unable to produce records showing the rates of return for the various funds during the first six months after the parties' marriage. Accordingly, the expert estimated the rates of return for that six-month period. Husband further had no records showing, nor could anyone delineate, which of the three funds the $17,489 was invested in at the time of, or during the period of, the marriage. Nevertheless, the evidence is undisputed that the $17,489 of separate property was invested in one or more of the three funds.

the separate property been invested entirely in the fund yielding the highest rate of return, the maximum increase in value would have been $135,900.

In Mann, we were not called upon to review the method the trial court used to calculate the income or interest earned on a defined contribution pension plan. However, in Mann, we noted that the formula employed by the expert witness to determine the income earned on the separate and marital shares comported with methods used and accepted in other jurisdictions.[3] See Mann, 22 Va. App. at 463 n.4, 470 S.E.2d at 606 n.4 (citing Defined Contribution Plans, Equitable Distribution Journal, Vol. 13, No. 1 at 4-5 (Jan 1996); Thielenhaus v. Thielenhaus, 890 P.2d 925, 929-30 (Okla. 1995); White v. White, 521 N.W.2d 874 (Minn. Ct. App. 1994)). In Thielenhaus, a case we cited with approval in Mann, the Oklahoma Supreme Court affirmed use of the following method to calculate the marital share of a defined contribution pension plan:

> (1) multiply the fund's beginning balance
> . . . at the date of marriage . . . (2)

---

[3]In Mann, we did not expressly endorse a particular formula for calculating the passive income on a separate portion of a defined contribution plan. However, in addition to citing formulas approved in other jurisdictions, we noted that the use of a coverture fraction (or the "time rule"), which allocates the value of the separate portion of the fund based on the length of time the spouse participated in the plan prior to marriage, would achieve "incongruous" results if applied to a defined contribution plan.

-

> times the average earning of the pension account [during the marriage] and . . . (3) compound annually the interest until the date of separation . . . (4) subtract that amount from . . . the value of the fund . . . [on the date of separation] to arrive at a divisible marital asset.

Thielenhaus, 890 P.2d at 929-30. In doing so, steps (1) through (3) yield the value of the pre-marital separate investment as of the date of separation.

Here, husband's expert calculated the income earned on the husband's $17,489 pre-marital contributions by applying the same method employed in the Thielenhaus case. The husband's expert witness presented credible evidence establishing the minimum income that his pre-marital contribution of $17,489 to the SIP would have earned were it invested in the fund with the lowest rate of return.

A trial court's decision regarding equitable distribution will not be altered on appeal unless plainly wrong or without evidence to support it. See McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994). Here, the trial court erred when, in view of the evidence presented, it failed to classify as husband's separate property at least the minimum passive growth on the husband's pre-marital investment of separate property in the SIP.

-

## III.  DISTRIBUTION OF MARITAL DEBT

Husband contends the trial court erred in assigning him the total $32,000 debt remaining on a loan secured by the SIP.  The parties incurred this debt, at least in part, to renovate the Berkshire property.[4]

"In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case."  Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 870 (1990).  Unless the record shows that the trial judge has abused his or her discretion by misapplying the statutory factors, the trial judge's determination will not be reversed on appeal.  See id.

Although the trial judge awarded husband all of the debt secured by the SIP, this figure amounted to approximately 52% of the total remaining marital debt.  The court assigned to wife approximately $28,000 in marital debt incurred to facilitate purchase of the marital residence.  Accordingly, we find that the trial judge did not abuse his discretion in dividing the marital debt.

---

[4]The husband's testimony was that the SIP loan was actually a consolidation of three or four different loans incurred at different times.  The evidence did not establish the purpose for each of the loans.

## IV.  CONCLUSION

We affirm the trial court's classification of the Berkshire property and the trial court's apportionment of the marital debt.  However, we reverse the trial court's decision to deny the husband at least the minimum passive interest earned on his separate portion of the SIP.  We remand the case with instructions that the trial court exercise its discretion to determine the appropriate distribution of the SIP in accordance with this opinion and within the parameters of the expert's testimony.  Accordingly, the judgment of the trial court is reversed and the case is remanded for further consideration by the trial judge on the record.

<u>Affirmed, in part,
and reversed and
remanded, in part</u>.