COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Elder and Humphreys
Argued at Alexandria, Virginia


DIANA M. L. TURONIS

MEMORANDUM OPINION[*] BY
v.     Record No. 2110-02-4          JUDGE LARRY G. ELDER
                                      MARCH 11, 2003
JOHN J. TURONIS


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Marcus D. Williams, Judge

Douglas E. Bywater (Tate & Bywater, Ltd., on
briefs), for appellant.

David H. Fletcher (Gannon & Cottrell, P.C.,
on brief), for appellee.


Diana M.L. Turonis (wife) appeals from an order equitably
distributing property from her marriage to John J. Turonis
(husband) and denying her request for spousal support. On
appeal, she contends the trial court erroneously (1) found a
portion of the equity in the marital home was husband's separate
property or, in the alternative, improperly calculated the
amount that was separate; (2) required her to pay a portion of
husband's credit card debt; (3) failed to treat as separate
property monies wife received from the sale of two parcels of
real property; (4) failed to divide the parties' respective

---

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

military pensions; (5) failed to award spousal support; and (6) failed to award attorney's fees.[1]

We hold the trial court erroneously calculated the equity in the marital residence by allowing the deduction of selling expenses absent evidence the home was likely to be sold, and we remand for division of the equity in the marital residence in keeping with this opinion. We affirm on all others issues but direct the court to reconsider the spousal support and equitable distribution awards as necessary based on its ultimate distribution of the equity in the marital residence.

## I.

### EQUITABLE DISTRIBUTION

On appeal from an equitable distribution award, we review the evidence in the light most favorable to the party prevailing below. See, e.g., Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999).

> Unless it appears from the record that the chancellor has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the chancellor's equitable distribution award will not be reversed on appeal.

Smoot v. Smoot, 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987).

---

[1] Wife also claimed the trial court erred by ordering her to sign a deed transferring the marital residence to husband without requiring husband to assume the mortgage indebtedness. However, wife concedes this issue is now moot.

-

A.

VALUATION AND CLASSIFICATION OF EQUITY IN THE MARITAL RESIDENCE

On appeal, wife contends the trial court erroneously (1) concluded that husband retraced the $60,000 in the A.G. Edwards account and that she failed to prove a gift of that money to her; (2) used the Brandenburg formula to divide the increase in value of the home; and (3) reduced the equity it divided by $46,800 in alleged selling costs.

1.  Tracing and Evidence of Gift

"[T]he party claiming a separate interest in transmuted property bears the burden of proving retraceability."  von Raab v. von Raab, 26 Va. App. 239, 248, 494 S.E.2d 156, 160 (1997). "This process involves two steps: a party must first (1) establish the identity of a portion of hybrid property and (2) directly trace that portion to a separate asset."  Rahbaran v. Rahbaran, 26 Va. App. 195, 208, 494 S.E.2d 135, 141 (1997).  "If the party claiming a separate interest in the transmuted property proves retraceability, the burden shifts to the other party to prove that the transmutation of the separate property resulted from a 'gift.'"  von Raab, 26 Va. App. at 248, 494 S.E.2d at 160.

Wife contests the retraceability of husband's separate contribution to the extent that she and husband were jointly liable on a short-term loan for $48,000, the proceeds from which were used to purchase the marital residence.  Wife appears to

-

contend that her legal liability on that note, for however brief a time, entitles her to have "that portion of the equity purchased with the proceeds of the joint loan . . . categorized as marital property."  We disagree.  Adopting wife's argument would require us to ignore uncontradicted evidence that husband used funds from the A.G. Edwards account to pay off the short-term loan when the treasury note in that account matured less than a month after closing and would deprive husband of the share of equity retraceable to that separate contribution.  Wife has failed to prove what portion of the equity, if any, is attributable to the fact that she was jointly liable on the $48,000 loan for one month.  See, e.g., Moran v. Moran, 29 Va. App. 408, 512 S.E.2d 834 (1999).  In the absence of such proof, we hold the evidence supports the trial court's conclusion that husband retraced the subject contributions by a preponderance of the evidence.

Wife also contends that husband gifted to her the $60,000 he put into the A.G. Edwards account, which was titled jointly, and various other jointly held accounts before using the funds to purchase the marital residence.  Per Code § 20-107.3(A)(3)(g), however, "[n]o presumption of gift arises from the fact that the property was retitled."  Theismann v. Theismann, 22 Va. App. 557, 565, 471 S.E.2d 809, 813, aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996).  The party claiming the existence of a gift "must prove by clear and

-

convincing evidence '(1) intention on the part of the donor to make a gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee.'" Utsch v. Utsch, 38 Va. App. 450, 458, 565 S.E.2d 345, 349 (2002) (quoting Theismann, 22 Va. App. at 566, 471 S.E.2d at 813).

Thus, the fact that husband and wife were joint owners of the A.G. Edwards account and that some of the funds husband claimed as separate were subsequently placed in other accounts jointly owned by the parties and ultimately used to purchase the jointly titled residence did not establish that husband intended to make a gift of the funds to wife. Further, husband expressly denied intending to make a gift of the funds to wife, and wife offered no evidence that husband ever expressed such an intent, either contemporaneously with the transfers or at any other time. Wife testified merely that husband never said that the subject funds were "his separate money" or that "either of [them] [had] any more of an interest in [the] house than the other." This evidence established, at most, that husband was silent on the issue of whether he intended a gift of the funds to wife. The fact that wife participated in discussions with husband and the A.G. Edwards broker when the account was first opened as to how the money should be invested does not compel the conclusion that husband intended to make a gift of the funds to the marriage. The fact that wife was jointly obligated with husband on the short-term loan, the proceeds from which were

-

used to purchase the marital residence and which husband subsequently paid off with funds from the A.G. Edwards account, also does not compel such a conclusion. Thus, the evidence was sufficient to support the trial court's finding that wife failed to meet her burden of proving husband's intent to make a gift by clear and convincing evidence.

### 2. Use of Brandenburg Formula to Calculate Equity

Wife also contends the trial court's use of the Brandenburg formula is inequitable because the parties signed a note for almost eighty percent of the purchase price of the property and because wife's "superior income enabled the parties to take on such an obligation." We disagree.

As wife concedes, we have held "that the Brandenburg formula is an acceptable method of tracing and determining the value of the marital and separate property components of hybrid property under Code § 20-107.3(A)(3)." Hart v. Hart, 27 Va. App. 46, 66, 497 S.E.2d 496, 505 (1998) (citing Brandenburg v. Brandenburg, 617 S.W.2d 871 (Ky. Ct. App. 1981)). The Brandenburg formula does not take into account the extent to which the parties are obligated on a loan used to purchase the property; it considers only the degree to which payment on that loan reduces the loan principle, thereby resulting in the acquisition of equity, marital or nonmarital, in the property. See id.

-

Although we have recognized methods other than the Brandenburg formula also may be used to retrace separate contributions and apportion equity in marital property, see id. at 66 n.4, 497 S.E.2d at 505 n.4, we have never held that proper application of the Brandenburg formula was unfair in a particular case. Under the facts of this case, where the parties had roughly the same annual income at the time the mortgage was obtained and made a down payment on the residence of approximately twenty percent, we conclude the trial court's application of the Brandenburg formula to calculate the parties' respective shares of the equity was not error.

### 3. Deduction of Selling Expenses

We hold the court erred in allowing a deduction for selling expenses. Deductions for "[e]xpenses of sale, such as a broker's fee in the sale of real estate" are improper unless "the asset is actually being sold or is likely to be sold." Peter N. Swisher, Lawrence D. Diehl & James R. Cottrell, Virginia Family Law § 11-25(a), at 492 (3d ed. 2002).

Our holdings in Arbuckle v. Arbuckle, 22 Va. App. 362, 470 S.E.2d 146 (1996), and Barnes v. Barnes, 16 Va. App. 98, 428 S.E.2d 294 (1993), cited by husband, support this result. Arbuckle involved the valuation of a dental practice for purposes of equitable distribution. 22 Va. App. at 366, 470 S.E.2d at 147. The valuation was hypothetical only; no evidence indicated that "a sale would occur in the near future" or even

-

that Mr. Arbuckle desired to sell his practice. Id. at 365-66, 470 S.E.2d at 147-48. Under these circumstances, we held that consideration of the potential tax consequences of a sale, which the trial court expressly recognized "indulged a 'legal fiction[,]' . . . were too speculative to be considered." Id. Further, in Arbuckle, we distinguished our holding in Barnes, 16 Va. App. at 105-06, 428 S.E.2d at 300, in which we recognized that awarding the marital residence to husband shifted to him the potential capital gains tax liability wife would have incurred if the sale had occurred while she retained an ownership interest. We noted in Arbuckle that "potential liability for capital gain tax upon sale . . . is a proper consideration in the determination of a property division and an award, if it is not speculative." Arbuckle, 22 Va. App. at 367, 470 S.E.2d at 148 (emphasis added). Thus, Arbuckle and Barnes stand for the proposition that the deduction of selling expenses constitutes error where sale is unlikely and, therefore, speculative.

Here, although husband testified he was seeking selling expenses, he never testified that he intended to sell the house, and his attorney represented in both opening and closing that husband wanted to keep the house. Finally, the trial court ruled that husband could purchase the house because "[the court doesn't] believe that fixing [up] the house and public sale of the house is . . . financially feasible." Husband represented

-

in his brief filed December 26, 2002, that he still owns the home and has obtained a new mortgage in his name alone.

Because the sale of the house was speculative at best,[2] we hold the trial court erred in deducting selling expenses in calculating the equity in the property, and we remand to the trial court to divide equity of $340,997 in the marital residence in a manner consistent with this opinion.

B.

APPORTIONMENT OF CREDIT CARD DEBT

"The court shall . . . have the authority to apportion and order the payment of the debts of the parties, or either of them, that are incurred prior to the dissolution of the marriage, based upon the [ten] factors listed in [Code § 20-107.3(E)]." Code § 20-107.3(C). Those factors include "the basis for such debts and liabilities" and "[s]uch other factors as the court deems necessary or appropriate." Code § 20-107.3(E)(7), (10).

Wife contends the court's ruling holding her responsible for $2,200 of the debt on husband's Chase credit card "lacked any evidentiary basis." We disagree. Although the card was in husband's name, husband represented that approximately $8,350 of the debt on the card, the balance at the time of separation, was

_____

[2] Wife also contends husband failed to offer evidence to support his claim that selling expenses would equal eight percent. Because wife failed to object on this ground at trial, we hold this issue is barred by Rule 5A:18.

-

marital debt.  Wife does not expressly dispute that the debt was marital and argues only that she paid off the credit cards she held in her name only, implying that husband should be required to do the same.  She also claims that husband, without her knowledge or permission, transferred a $9,000 balance of his own to one of her accounts.  However, husband denied wife's claim. Under these circumstances, we hold the trial court did not abuse its discretion in holding wife responsible for approximately twenty-five percent of the remaining marital credit card debt.

C.

PROCEEDS FROM WIFE'S REAL ESTATE SALES

The evidence established that wife owned two pieces of real estate prior to the parties' marriage and sold both shortly after the parties were married.  In 1993, she sold an Illinois property and received $19,074.11, which she used to pay back a loan she had taken from the trust of one of her children from her first marriage and also to pay off the costs of the parties' wedding and honeymoon.  Wife's exhibit 7 represented these funds as monetary contributions to the parties' marriage, but no other evidence indicated that the loan from the trust was used for a marital purpose or, assuming the wedding and honeymoon costs were marital and the trust loan was not, what portion of the loan proceeds were used for which purpose.  Thus, the trial court did not abuse its discretion in failing expressly to award

-

wife a credit for these separate funds in the equitable distribution.

In 1994, wife sold a Florida property for $34,851.71, which she used to purchase a 1995 Chevrolet Surburban while husband was overseas. In the equitable distribution, the trial court stated that wife "shall receive the 1995 Chevrolet Suburban . . . free and clear of any claims of [husband], with a value of $13,125.00." Thus, contrary to wife's claim that the trial court gave her no credit for the funds she used to buy the vehicle, the trial court awarded the vehicle to her in the equitable distribution. It also awarded wife $22,000 more of the marital equity in the residence than it awarded to husband. Under these facts, we hold the court's failure expressly to credit wife for the contribution of funds used to purchase the Suburban did not constitute an abuse of discretion.

D.

DISTRIBUTION OF MILITARY PENSIONS

Code § 20-107.3(A) provides that the trial court "upon request of either party, shall determine the . . . value of all property, real or personal, tangible or intangible, of the parties." Subsection (G)(1) provides that "[t]he court may direct payment of a percentage of the marital share of any pension, profit-sharing or deferred compensation plan or retirement benefits, whether vested or nonvested, which

-

constitutes marital property and whether payable in a lump sum or over a period of time."

"We have recognized two methods for valuing and dividing a defined benefit plan . . . ." Torian v. Torian, 38 Va. App. 167, 176, 562 S.E.2d 355, 360 (2002). Under the "'immediate offset approach,'" the trial court determines the present value of the marital share of the benefits and considers this value in making the monetary award. Id. (quoting Gamer v. Gamer, 16 Va. App. 335, 342-43, 429 S.E.2d 618, 624 (1993)). The court must determine present value even "[w]here an award of the entire pension is made to the owning spouse." Johnson v. Johnson, 25 Va. App. 368, 374, 488 S.E.2d 659, 662 (1997).

Under the "deferred distribution approach," the court awards "a percentage of the marital share of the pension, in which case payment is to be made only as retirement benefits are paid." Gamer, 16 Va. App. at 342-43, 429 S.E.2d at 624. "If a trial court orders deferred distribution of the marital share of the pension, it need not determine the pension's present value." Torian, 38 Va. App. at 177, 562 S.E.2d at 360.

Here, the parties offered no evidence of present value. As a result, wife contends, the trial court was required to divide the pensions under the deferred distribution method. Under the facts of this case, we disagree. Both parties had defined benefit military pensions, and the only evidence as to value was wife's testimony that, as a starting point, her pension as a

-

Navy Reservist was half that of husband's as an active duty member of the Navy. She admitted other factors such as points earned or months of service affected the ultimate benefit calculation but provided no evidence of the actual benefit amount either could expect to receive. Although the record contained sufficient evidence to allow the trial court to award each party a percentage of the marital share of the other's pension without abusing its discretion, we hold that its decision not to make an award, based on a lack of evidence of the respective values of the pensions, also was not an abuse of discretion. See, e.g., Bowers v. Bowers, 4 Va. App. 610, 618, 359 S.E.2d 546, 551 (1987). Nevertheless, the trial court remains free to make a different distribution of the pension when it revisits the equitable distribution on remand.

## II.

### SPOUSAL SUPPORT

In awarding spousal support, the trial court must consider the factors set out in Code § 20-107.1. Decisions concerning spousal support "rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994).

A spouse's voluntary underemployment may serve as a basis for imputing income to the underemployed spouse when calculating spousal support. See Code § 20-107.1; see also Stubblebine v.

-

Stubblebine, 22 Va. App. 703, 708, 473 S.E.2d 72, 74 (1996) (en banc). The fact that the spouse has custody of a minor child and wishes to stay home with that child rather than work does not prevent a court from imputing income to that spouse for purposes of determining whether an award of spousal support is appropriate. Cf. Bennett v. Dep't of Soc. Servs., 22 Va. App. 684, 692-93, 472 S.E.2d 668, 672 (1996) (in case involving imputation of income for purposes of calculating child support, recognizing that "the trial court shall impute income to a custodial parent who is voluntarily unemployed or underemployed where the age of the child and circumstances permit the custodial parent to be gainfully employed" but holding principle did not apply under facts of case, which involved "profoundly disabled" child).

On brief, wife contends solely that her age and the age of her child justify her voluntary unemployment. When the final decree was entered on July 24, 2002, wife was 46 years old and the parties' minor child was 19 months old. Wife asserts that Code § 20-107.1(E)(4) and (5), which require the court to consider the age, physical and mental condition of the parties and age, physical and mental condition, and special circumstances of the child, compel an award of spousal support so that she will be able to stay at home until the child enters school.

-

We disagree. In imputing income to wife and denying her request for spousal support, the trial court specifically stated that it considered all the statutory factors. It found that wife was "intelligent," "eminently qualified to work" and "has done extremely well" in the work force. It observed further,

> This is not a case of a child with special needs, nor was this a marriage involving a stay-at-home mom, [n]or was there an agreement in this marriage that [wife] would be a stay-at-home mom. Indeed, she has worked and brought home a substantial amount of the income during the marriage, . . . [which was one] of short duration [7 years and 8 months] . . . .

The trial court also commented, "Given the financial stress of both parties, [wife] has no choice but to work." The court acknowledged evidence that wife had ongoing health problems but found "none have [rendered her] in any way debilitated or incapacitated," and wife does not challenge this finding on appeal.

The court heard evidence that wife was capable of earning $100,000 to $130,000 per year in the Washington, D.C., area, where she and husband resided at the time of their separation, and $75,000 per year in the Atlanta, Georgia, area, where she moved after the parties' separation in order to be closer to her family.

Based on the evidence, we hold the trial court did not abuse its discretion in imputing $75,000 in income to wife. However, because we reverse and remand the trial court's

-

equitable distribution award, we direct the trial court to reconsider wife's spousal support request in light of its final resolution of the equitable distribution.  See Code § 20-107.1(E)(8).

### III.

### ATTORNEY'S FEES

Whether to award attorney's fees is left to the sound discretion of the trial court.  See, e.g., Lightburn v. Lightburn, 22 Va. App. 612, 621, 472 S.E.2d 281, 285 (1996). Here, the trial court found wife was capable of earning $75,000 per year, and the evidence established that wife earned more than husband during the majority of their marriage.  Husband substantially prevailed on the disputed equitable distribution and spousal support issues.  Finally, husband incurred attorney's and expert witness fees totaling $116,121.25, whereas wife concedes on brief her attorney's fees and costs were only "a fraction" of husband's.  Under these circumstances, we hold the trial court did not abuse its discretion in ordering that the parties be responsible for their own attorney's fees. However, we direct the trial court to reconsider this ruling, if necessary, in light of its resolution of the equitable distribution and spousal support issues on remand.

-

IV.

For these reasons, we hold the trial court erroneously calculated the equity in the marital residence, and we remand for further proceedings consistent with this opinion.

<u>Affirmed in part,</u>
<u>reversed in part</u>
<u>and remanded.</u>