UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Chafin and AtLee
Argued at Lexington, Virginia

BENNY JOE DIXON

v.        Record No. 1689-18-3

SCARLETT JEAN LOY DIXON

MEMORANDUM OPINION* BY
JUDGE TERESA M. CHAFIN
APRIL 23, 2019

FROM THE CIRCUIT COURT OF LEE COUNTY
Jeffrey Hamilton, Judge

Timothy W. McAfee (Timothy W. McAfee, PLLC, on brief), for
appellant.

Thomas R. Scott, Jr. (Street Law Firm, LLP, on brief), for appellee.


Benny Joe Dixon ("the husband") challenges an equitable distribution decision from the

Circuit Court of Lee County. He presents three assignments of error on appeal pertaining to a

farm and residence owned by the parties. The husband contends that the circuit court erred by

failing to (1) classify the farm and residence as hybrid property, (2) determine the value of the

marital share of the farm and residence, and (3) conclude that he adequately traced separate

funds that were contributed to the farm and residence. In an additional assignment of error, the

husband argues that the circuit court erred by failing to "adjust the equitable distribution award"

based on the payment of the separate debt of Scarlett Jean Loy Dixon ("the wife") with marital

funds. Upon review, we conclude that the husband failed to trace the alleged separate

contributions to the parties' farm and residence. We also conclude that the husband failed to

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

prove that the alleged marital contributions to the wife's separate debt created any marital equity in her separate property. Accordingly, we affirm the circuit court's decision.

## I. BACKGROUND

"When reviewing a [circuit] court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258 (2003). So viewed, the evidence is as follows.[1]

The parties married on July 23, 2005. Both the husband and the wife owned separate assets at the time of their marriage. The wife owned a commercial rental property in Tennessee, and the husband owned a home in Kentucky. The husband also owned a significant amount of stock in Arch Coal, Inc. Both the husband and the wife were gainfully employed at the time of their marriage, and they each earned a substantial income.

Around the time of their marriage, the parties decided to purchase a farm in Lee County and build a house on the property. The parties planned to finance the purchase and construction project using their separate funds and a loan secured by the husband's home in Kentucky. On October 12, 2005, the parties bought a farm for $69,500. They subsequently improved the property and eventually built their marital home there. An appraisal of the Lee County property that was introduced into evidence indicated that the construction of the parties' home was completed in 2009.

The husband sold a substantial amount of Arch Coal stock in the same year that the parties purchased the Lee County farm. The record presented in this case established that the husband sold 931 shares of stock on January 1, 2005, for $31,955.48; 1,907 shares of stock on April 20, 2005, for $83,126.90; and 1,650 shares of stock on September 6, 2005, for

---

[1] The majority of our discussion of the evidence presented in this case comes from our review of the record rather than our review of the appendix. See Rule 5A:25(h) (permitting this Court to consider parts of the record that are not included in the appendix).

- 2 -

$102,010.23. While numerous deposits were made into the husband's BB&T checking account throughout 2005, these deposits did not directly correspond to the husband's stock sales.

On September 30, 2005, the husband wrote a check from his BB&T account for $6,950. On November 15, 2005, the husband wrote another check from the BB&T account for $63,983.67. While the husband maintained that these checks were written for the purchase of the Lee County farm, the bank statements pertaining to the BB&T account did not indicate to whom the checks were written. A deed of trust document was admitted into evidence that confirmed that the parties obtained a mortgage on the husband's Kentucky home on October 14, 2005, consistent with their initial plan to obtain a loan to partially finance the purchase of the Lee County farm and the construction of their home.

The bank statements from the husband's BB&T account established that it was converted into the joint checking account of the husband and the wife around March 8, 2007. After that date, both parties deposited their income into the BB&T account.[2] The parties paid their bills and living expenses using funds from the BB&T account. They also made payments on a debt that the wife owed on her separate property in Tennessee. Throughout their marriage, the parties paid approximately $700 per month from the BB&T account to satisfy the debt on the wife's Tennessee property.

The parties separated on September 5, 2015. Both the husband and the wife filed complaints for divorce, and each of them requested the circuit court to equitably distribute their marital property. The husband argued that he contributed separate funds obtained from the sale of his Arch Coal stock to purchase the Lee County farm and finance the construction of the parties' marital home. The husband maintained that he should be compensated for these separate

---

[2] Although the wife retired from her employment in 2009 due to a disability, she continued to deposit approximately $80,000 into the BB&T account each year.

contributions to the property. The husband also argued that the circuit court's equitable distribution award should reflect that the wife's separate debt was paid using marital funds.

In response, the wife maintained that both parties contributed separate funds for the purchase of the Lee County farm and the construction of their marital residence. The wife also emphasized that the parties obtained a loan to partially finance the purchase of the farm and the construction project. While the wife conceded that marital funds were used to pay the debt she owed on her Tennessee property, she noted that she deposited her personal income into the BB&T account from which the payments were made.

On July 12, 2018, the circuit court issued an opinion letter setting forth its equitable distribution decision. Referencing the loan obtained by the parties, the circuit court classified the Lee County farm and residence as marital property. The circuit court ultimately awarded the vast majority of the parties' real and personal property to the husband and granted the wife a monetary award corresponding to half of the value of the parties' marital property. The circuit court declined to award the husband any credit or setoff based on his alleged contributions of separate property to the parties' farm and residence or the payment of the wife's separate debt with marital funds.

On August 23, 2018, the husband filed a motion requesting the circuit court to reconsider its equitable distribution decision. In his motion, the husband argued that the Lee County farm and the marital residence were hybrid property. The husband maintained that he contributed separate funds obtained from the sale of his Arch Coal stock to purchase this property and that the bank statements of the BB&T account traced these contributions. The husband also argued that the circuit court failed to consider that the wife's separate debt on her Tennessee property was paid with marital funds throughout the parties' marriage. The circuit court denied the

husband's motion to reconsider and entered a final decree of divorce incorporating its prior opinion letter on September 25, 2018. This appeal followed.

## II. ANALYSIS

The husband's four assignments of error address two primary arguments. The husband contends that the circuit court erred by failing to conclude that he traced his separate monetary contributions to the parties' farm and residence to the extent necessary to allow those assets to be classified as hybrid property. The husband also argues that the circuit court failed to adequately consider that the wife's separate debt was reduced using marital funds. We disagree with both of the husband's arguments.

### A. THE HUSBAND FAILED TO TRACE HIS SEPARATE CONTRIBUTIONS TO THE PARTIES' FARM AND RESIDENCE

The husband maintains that the circuit court erred by classifying the parties' farm and residence as marital property. The husband maintains that he contributed $175,000 of his separate funds to purchase the farm and construct the parties' marital home.[3] Furthermore, the husband contends that he traced the contribution of his separate funds through the bank statements of the parties' BB&T account that he introduced into evidence. Thus, the husband argues that the farm and residence should have been classified as hybrid property and that the circuit court should have determined the value of the marital portion of the farm and residence.

The circuit court's classification of property is a finding of fact that "will not be reversed on appeal unless it is plainly wrong or without evidence to support it." Ranney v. Ranney, 45 Va. App. 17, 31-32 (2005). Pursuant to Code § 20-107.3, property may be classified as

---

[3] The husband's brief states that "[t]he total amount of separate funds used to purchase the land, build the home and purchase [farm] equipment was $175,000." While we conclude that the evidence presented in this case failed to trace the husband's separate contributions to the parties' farm and residence, we note that the evidence also failed to establish how much of the alleged $175,000 contribution was used to purchase farm equipment.

"separate," "marital," or "part marital . . . and part separate." See Code § 20-107.3(A)(1)-(3).

Code § 20-107.3(1)(A)(i) defines "separate property" as "all property, real and personal, acquired by either party before the marriage." Separate property also includes "all property acquired during the marriage in exchange for or from the proceeds of sale of separate property, provided that such property acquired during the marriage is maintained as separate property." Code § 20-107.3(A)(1)(iii). In contrast, "marital property" includes "all property titled in the names of both parties," Code § 20-107.3(A)(2)(i), and "all other property acquired by each party during the marriage which is not separate property," Code § 20-107.3(A)(2)(iii). "Property acquired during the marriage is presumptively marital property, unless shown to be separate property." Ranney, 45 Va. App. at 32.

Code § 20-107.3(A)(3) addresses "part marital . . . and part separate" property. This property is commonly known as "hybrid" property. See, e.g., Ranney, 45 Va. App. at 33. Code § 20-107.3(A)(3)(e) applies when new property is acquired through the contribution of both marital and separate property.

> When marital property and separate property are commingled into newly acquired property resulting in the loss of identity of the contributing properties, the commingled property shall be deemed transmuted to marital property. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, the contributed property shall retain its original classification.

Code § 20-107.3(A)(3)(e). Similarly, Code § 20-107.3(A)(3)(g) applies when new property is acquired through the contribution of the separate property of each party.

> When . . . the separate property of each party is commingled into newly acquired property, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, each party shall be reimbursed the value of the contributed property in any award made pursuant to this section.

Code § 20-107.3(A)(3)(g).

The party seeking to segregate the separate portion of hybrid property bears the burden of tracing the separate component of the property. See Hamad v. Hamad, 61 Va. App. 593, 602 (2013).

> In order to trace the separate portion of hybrid property, a party must prove that the claimed separate portion is identifiably derived from a separate asset. This process involves two steps: a party must (1) establish the identity of a portion of hybrid property and (2) directly trace that portion to a separate asset.

Rahbaran v. Rahbaran, 26 Va. App. 195, 208 (1997).

"If the party claiming a separate interest in property acquired during the marriage fails to provide sufficient tracing evidence, an asset purchased with both marital and separate funds 'shall be deemed transmuted to marital property.'" Ranney, 45 Va. App. at 34-35 (quoting Code § 20-107.3(A)(3)(e)). When separate and marital property are commingled "to the point that direct tracing is impossible, the claimed separate property loses its separate status." McIlwain v. McIlwain, 52 Va. App. 644, 658-59 (2008) (quoting Rahbaran, 26 Va. App. at 208). "[E]ven if a party can prove that some part of an asset is separate, if the court cannot determine the separate amount, the unknown amount contributed from the separate source transmutes by commingling and becomes marital property." Ranney, 45 Va. App. at 35 (quoting Rahbaran, 26 Va. App. at 208-09).

In the present case, the husband failed to trace his alleged contributions to the parties' farm and residence to his separate property. Although the husband contends that he sold the Arch Coal stock that he acquired before the parties' marriage and contributed the proceeds to the purchase of the parties' farm and the construction of their home, the record in this case did not establish that the proceeds from the sale of the Arch Coal stock were actually used for these purposes.

While the husband introduced an exhibit showing that he sold significant amounts of Arch Coal stock in 2005, the husband did not provide any evidence to establish where he deposited the proceeds of the sales. The bank statements of the BB&T account showed that numerous deposits were made into the account throughout 2005. The bank statements, however, did not indicate the source of most of these deposits. Moreover, none of the deposits that were made into the BB&T account during 2005 matched the dollar amounts that the husband realized when he sold the Arch Coal stock. Although the husband may have first deposited the proceeds of stock sales into a different savings or bank account before moving the proceeds to the BB&T account, he did not provide any bank records to prove that these deposits were made or any evidence to that effect at trial.

Without evidence establishing that the separate funds the husband obtained through the sale of his Arch Coal stock were deposited into the BB&T account (or deposited into another account and subsequently transferred to the BB&T account), the husband could not prove that the funds from the BB&T account that were used to purchase the parties' farm and build their house were his separate funds. As noted by the circuit court, the funds from the BB&T account that were used to purchase the farm and build the parties' house may have been acquired through the loan the parties obtained during their marriage. Both parties acknowledged that they obtained a loan to finance the purchase of the Lee County farm and the construction of their home on that property, and a deed of trust document was admitted into evidence that confirmed the parties obtained such a loan on October 14, 2005, two days after they bought the Lee County farm.

Additionally, the evidence presented in this case suggested that some of the funds that the parties used to purchase the Lee County farm and build their home came from marital income. Even if the husband deposited the proceeds of the sale of his Arch Coal stock into the BB&T

account, those funds would have been commingled with the parties' marital income that was also deposited into the account. "When a spouse commingles separate and marital funds in a single account created during the marriage, the spouse claiming a separate share must shoulder the burden of tracing. If he cannot do so, the account remains wholly marital." McIlwain, 52 Va. App. at 658 (quoting Robbins v. Robbins, 48 Va. App. 466, 478-79 (2006)).

Although the BB&T account was owned solely by the husband when the parties were married on July 23, 2005, he continued to deposit his monthly income into the account following the parties' marriage. As the parties bought the Lee County farm on October 12, 2005, the purchase of the farm may have been partially financed by the husband's marital income. Moreover, the bank statements of the BB&T account established that the wife began depositing her income into the account around March 8, 2007. Therefore, any funds from the BB&T account that were used to finance the construction of the parties' home after this date may have originated from the marital income of either party.

For these reasons, we conclude that the evidence presented in this case failed to trace the husband's alleged separate contributions to the parties' farm and residence. Because the husband failed to establish where he deposited the proceeds of the sale of his Arch Coal stock, he failed to prove that those funds were used to purchase the Lee County farm or build the parties' house on that property. The evidence presented in this case implied that loan proceeds and marital income may have been used to purchase the farm and finance the construction of the marital residence. As the husband failed to trace his separate contributions to the parties' farm and residence, the circuit court did not err by classifying them as marital property. See Hamad, 61 Va. App. at 602 ("If any link in the tracing chain cannot be proven . . . the asset is marital property." (quoting 1 Brett R. Turner, Equitable Distribution of Property § 5:63, at 638 (3d ed. 2005))). In turn, the

circuit court did not err by failing to determine the value of the separate and marital portions of the farm and residence.

### B. THE HUSBAND FAILED TO TRACE THE MARITAL CONTRIBUTIONS TO THE WIFE'S SEPARATE DEBT TO AN INCREASE IN THE EQUITY OF THE WIFE'S SEPARATE PROPERTY

The husband also contends that the circuit court erred by failing to consider that the parties used marital funds throughout their marriage to pay the debt that the wife owed on her separate property. The husband argues that the undisputed evidence presented in this case established that the parties paid approximately $700 per month from their BB&T account to reduce the debt on the wife's Tennessee property. Thus, the husband contends that the wife's separate debt was reduced by $84,000 during the course of their ten-year marriage.

We acknowledge that the circuit court's equitable distribution decision did not expressly reference the marital funds that were used to reduce the wife's separate debt on her Tennessee property.[4] Nevertheless, we conclude that the husband failed to sufficiently trace the alleged marital contributions to the wife's Tennessee property. In essence, the husband argues that the wife's separate Tennessee property became hybrid property because the parties used marital income to pay the debt owed on the property throughout their marriage. The husband maintains that these payments created a marital component of the wife's separate property.

> When marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution. However, to the extent the contributed property is retraceable by a preponderance of the

---

[4] We also note that the husband presented a similar argument to the circuit court in both his post-trial brief and his motion to reconsider. In light of these pleadings, it appears that the circuit court considered the husband's argument and rejected it.

- 10 -

> evidence and was not a gift, such contributed property shall retain
> its original classification.

Code § 20-107.3(A)(3)(d).

Pursuant to Code § 20-107.3(A)(3)(d), the marital income that the parties contributed to the wife's separate property through the payment of her debt transmuted to separate property, "the category of property receiving the contribution," unless the contributed marital income was "retraceable by a preponderance of the evidence." Therefore, the husband was required to present sufficient evidence tracing the marital contributions to the wife's separate debt if he wished for those contributions to retain their original marital classification and thereby create a marital interest in the wife's Tennessee property. See Code § 20-107.3(A)(3)(d).

This Court addressed a similar case in Moran v. Moran, 29 Va. App. 408 (1999). In that case, a party owed a separate debt on property that she purchased before her marriage. Moran, 29 Va. App. at 411. The party and her husband subsequently paid the debt using marital funds. Id. On appeal, this Court concluded that the property at issue was correctly classified as hybrid property rather than separate property because the husband presented "sufficient evidence to establish that a portion of the equity in the . . . property could be traced to marital funds." Id. at 414. While this Court acknowledged that the parties "commingled marital funds with separate property, resulting in the presumption that the marital funds were transmuted to separate property," id. at 413, it concluded that the husband traced the marital funds to a corresponding reduction in the principal of the debt owed on the property at issue. See id. ("[T]o the extent the marital funds reduced the principal of the mortgage, that amount is traceable from the separately acquired equity.").

In the present case, the evidence unequivocally demonstrated that the parties paid the debt that the wife owed on her separate property using marital funds. The evidence, however, did not establish that the marital payments reduced the principal of the wife's debt. Unlike the

husband in Moran, the husband in this case did not present adequate evidence to establish the amount of equity the wife acquired in the Tennessee property as a result of the marital payments. The husband failed to conclusively establish the principal balance that the wife owed on the debt when the parties married or the principal balance that the wife owed on the debt when the parties separated.

Although the wife testified in her deposition[5] that she owed "maybe $45,000" on the Tennessee property when the parties married, this claim was merely an estimate that was not supported by any additional documentary evidence. Notably, the wife also testified that "the balance [of the debt] when we went into the marriage and the balance when we ended the marriage was about the same, really." Although the parties paid $700 per month on the wife's debt, the husband did not present any evidence to establish that the principal owed on the debt was reduced by this amount with each monthly payment. Moreover, additional deposition testimony implied that the parties may have obtained other loans during their marriage that were secured by the wife's Tennessee property. These loans may have actually increased the amount of the debt owed on the property.

Under these circumstances, the circuit court could not possibly calculate the "extent the marital funds reduced the principal of the [debt]." See id. Thus, the husband failed to trace the marital contributions to a corresponding marital equity in the Tennessee property. As the husband did not trace the marital contributions to an increase in equity in the wife's separate property, the marital contributions transmuted to separate property pursuant to Code § 20-107.3(A)(3)(d). Consequently, the circuit court did not err by classifying the Tennessee property as the wife's separate property.

---

[5] The June 29, 2016 deposition of the wife and the July 11, 2016 deposition of the husband were admitted into evidence in this case.

## III. CONCLUSION

In summary, we conclude that the husband failed to present evidence that adequately traced his alleged separate contributions to the parties' farm and residence. He also failed to present evidence tracing the alleged marital contributions to the wife's separate debt to any increase in equity in the wife's Tennessee property. For these reasons, we hold that the circuit court did not err by classifying the parties' farm and residence as marital property and the wife's Tennessee property as her separate property. Accordingly, we affirm the circuit court's decision.

<u>Affirmed.</u>