COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Kelsey and Powell[*]
Argued by teleconference


HARRY D. CAMPBELL

                                                        MEMORANDUM OPINION[**] BY
v.        Record No. 1629-10-2                          JUDGE LARRY G. ELDER
                                                             AUGUST 9, 2011
BETTY J. CAMPBELL


                    FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                                  Cheryl V. Higgins, Judge

               Donald K. Butler (Player B. Michelsen; Butler Armstrong, LLP,
               on briefs), for appellant.

               Sidney H. Kirstein for appellee.


        In this second appeal from a final decree of divorce, Harry D. Campbell (husband) argues

that the trial court erred in:  (1) classifying husband's stock in Campbell Lumber Company

(CLC) as entirely marital property; (2) classifying husband's stock in Campbell Lumber

Company of Appomattox (CLCA) as entirely marital property; and (3) failing to adjust the value

of CLC for certain assets the company no longer owned.  We hold that (1) the trial court properly

classified CLC as marital property because husband did not meet his burden of tracing his

separate property into CLC and proving his post-separation efforts caused CLC to appreciate in

value; (2) the trial court properly relied on the use of marital property as collateral to purchase

CLCA as evidence of transmuting CLCA into marital property; and (3) the trial court did not err

---

        [*] Justice Powell participated in the hearing and decision of this case prior to her
investiture as a Justice of the Supreme Court of Virginia

        [**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

in disbelieving husband's testimony regarding the alleged diminutions in CLC's value. Accordingly, we affirm the challenged rulings.

I.

BACKGROUND

"We review the evidence in the light most favorable to . . . the party prevailing below and grant all reasonable inferences fairly deducible therefrom." Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). So viewed, the evidence establishes that husband and wife married in January 1973 and separated in December 1996. Four children were born of their marital union, all of whom were emancipated at the time of the divorce proceedings. Husband had two children from a previous marriage. Husband filed for divorce on January 29, 1997, on the grounds of constructive desertion, alleging wife shot him following an argument on December 21, 1996. Wife originally indicated she was the shooter, but she claimed in later proceedings that one of the parties' children shot husband.

One of the contested issues in the divorce proceeding was the validity of an agreement that purportedly conveyed CLC to wife if husband proceeded with the divorce. Both parties presented expert witnesses to support their respective theories concerning the enforceability of the agreement, and the trial court ruled that the agreement was binding on the parties such that CLC "shall be the sole and separate property of [wife]."

The trial court issued a letter opinion, memorialized in a final decree of divorce (collectively the 2006 decree) addressing the remaining issues the parties raised. Pertinent to this appeal, the trial court valued the parties' properties and, after consideration of all the evidence, awarded husband seventy-two percent of the marital property and wife twenty-eight percent.

Both parties appealed the 2006 decree. Campbell v. Campbell, 49 Va. App. 498, 500, 642 S.E.2d 769, 771 (2007) (Campbell I). The only issue this Court addressed was whether "the trial

- 2 -

court erred when it prevented [husband] from cross-examining wife's expert witness and a factual witness" regarding the agreement, id., and held that the circuit court "abused its discretion, as a matter of law, by preventing husband from cross-examining wife's witnesses due to the time limits it imposed," id. at 507, 642 S.E.2d at 774. We did not address the remaining assignments of error "with respect to the agreement itself and the equitable distribution of the remaining marital property" because they "depend[ed] upon the validity of the agreement." Id. at 507 n.5, 642 S.E.2d at 774 n.5. Accordingly, the mandate accompanying Campbell I "reversed and annulled" the 2006 decree and "remanded to the trial court for further proceedings in accordance with the views expressed in [Campbell I]."

On remand, the trial court held an evidentiary hearing to determine the validity of the agreement. The trial court held that wife did not meet her burden of proving the agreement was an enforceable contract, and it scheduled the matter for hearings beginning April 7, 2009, to address the equitable distribution of the marital assets (2009 proceedings). Upon motion by the parties, the trial court held that it would value the real and personal property of the parties based on the appraisals contained within the 2006 decree (2009 valuation order). The trial court noted that the parties did not possess sufficient liquid assets to pay for a new appraisal and a second appraisal would lengthen the litigation that had continued for the past ten years. However, the trial court allowed the parties to "utilize the actual sales price for any and all real estate sold by the parties" since the 2006 decree "to increase or decrease the overall valuation of the said property or entity." Further, husband reserved "the right to show that the sales proceeds . . . from the sales of the real estate tracts . . . were expended," and "to argue that the value of the two corporate entities [CLC and CLCA] . . . should be reduced from the said 2005 valuation due to the loss, sale or dissipation."

At the 2009 proceedings, the parties presented extensive evidence in the form of testimony and documentary exhibits regarding the classification of CLC and CLCA. Further, husband presented evidence relating to several pieces of personal property that he claimed were "broken down" or "removed by wife."

At the conclusion of the evidence, the trial court issued a letter opinion and final decree for divorce (collectively the 2010 decree). Pertinent to this appeal, the trial court classified CLC as entirely marital property. The trial court reasoned that because husband's testimony indicated most of the separate property he owned prior to the marriage was replaced with new equipment throughout the course of the marriage, husband was unable to prove that he maintained separate assets in CLC. Significant to the trial court's classification was its finding that husband's recollections concerning the separate property was not credible.

The trial court further classified CLCA as marital property because CLC provided the funds to make the down payment on CLCA. The trial court found it significant that husband used real estate owned by CLC as collateral to secure a loan to pay the remainder of the purchase price. Thus, even though husband purchased CLCA after the date of separation, the trial court held that the evidence overcame the presumption of separate classification such that wife did not need to trace the marital funds back to CLCA.

Finally, the trial court valued CLC at $5,377,491. The trial court did not specifically address husband's evidence offered to prove CLC's diminution in value, though it reiterated that husband's "memory does not appear to be reliable in this area." Further, the trial court did not explain the discrepancy between the value it assigned to CLC in the 2010 decree and the $5,369,665 value given in the 2005 valuation.

Both parties filed objections and legal memoranda in support of their respective positions. At a hearing on June 14, 2010, the trial court declined to hear additional arguments in the matter and denied all outstanding motions for reconsideration.

This appeal followed.

## II.

## ANALYSIS

"A trial court's decision, when based upon credibility determinations made during an ore tenus hearing, is owed great weight and will not be disturbed unless plainly wrong or without evidence to support it." Douglas v. Hammett, 28 Va. App. 517, 525, 507 S.E.2d 98, 102 (1998). We owe the trial court this deference "[b]ecause the trial court's classification of property is a finding of fact." Ranney v. Ranney, 45 Va. App. 17, 31, 608 S.E.2d 485, 492 (2005). Moreover, "'[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented.'" Thomas v. Thomas, 40 Va. App. 639, 644, 580 S.E.2d 503, 505 (2003) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995)).

## A.

## CLASSIFICATION OF ASSETS

Under Code § 20-107.3(A), the trial court must determine "the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property." We will reverse the trial court's decision only upon a showing of abuse of discretion. von Raab v. von Raab, 26 Va. App. 239, 246, 494 S.E.2d 156, 159 (1997).

## 1. CLC

It is undisputed that husband began a sawmill business in 1957, which he initially operated as a partnership with his brothers. In 1977, husband began developing a sawmill in a different location, North Garden, and in 1979, that sawmill became his principal place of business. Husband incorporated the North Garden sawmill in 1983 and renamed it CLC.

Husband argues the trial court erred in classifying CLC as entirely marital property because CLC existed under husband's control prior to the marriage. Husband contends the assets he owned prior to the marriage maintained their separate identity when they were commingled with the business that became the North Garden sawmill and again when said sawmill was incorporated into CLC. Husband avers the trial court erroneously focused on the turnover in these assets and instead asserts that he met his burden of tracing distinct assets in CLC to his separate property via the list of separate assets he presented.

The property subject to classification is husband's stock in CLC, which is presumptively marital property because it came into existence in 1983 when CLC became incorporated. Code § 20-107.3(A)(2)(iii) (defining marital property as "all other property acquired by each party during the marriage which is not separate property"). It is therefore husband's burden to prove that the CLC stock was "acquired . . . in exchange for or from the proceeds of sale of separate property, provided that such property acquired during the marriage is maintained as separate property." Code § 20-107.3(A)(1)(iii).

> When marital property and separate property are commingled into newly acquired property resulting in the loss of identity of the contributing properties, the commingled property shall be deemed transmuted to marital property. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, the contributed property shall retain its original classification.

Code § 20-107.3(A)(3)(e).

- 6 -

> In other words, if a party "chooses to commingle marital and non-marital funds to the point that direct tracing is impossible," the claimed separate property loses its separate status.  Melrod v. Melrod, 574 A.2d 1, 5 (Md. [Ct. Spec.] App. 1990).  Even if a party can prove that some part of an asset is separate, if the court cannot determine the separate amount, the "unknown amount contributed from the separate source transmutes by commingling and becomes marital property."  Brett R. Turner, Equitable Distribution of Property 268 (1994).

Rahbaran v. Rahbaran, 26 Va. App. 195, 208-09, 494 S.E.2d 135, 141 (1997).  "Whether a transmuted asset can be traced back to [its original] property interest is determined by the circumstances of each case, including the value and identity of the separate interest at the time of the transmutation."  von Raab, 26 Va. App. at 248, 494 S.E.2d at 160.

Here, husband submitted an itemized list of property and equipment he allegedly owned in 1973 (Schedule M) for the purpose of identifying his separate property that contributed to the sawmill.[1]  Husband testified that he continued to use these items in the course of operating his lumber business.  However, the trial court did not err in finding that husband did not meet his burden of proving retraceability because the record casts doubt on the trustworthiness of husband's evidence.  For example, Schedule M listed the Covesville property as belonging to husband prior to 1973, but wife introduced a deed that conveyed the property to husband on October 17, 1974, almost two years after the parties married.  Further, husband admitted multiple times on cross-examination that he did not have documentation to prove his ownership of the items on Schedule M or their respective values.  Finally, husband acknowledged that a fire destroyed much of his sawmill equipment in 1979.  Significantly, the fire occurred approximately two weeks before husband opened the North Garden sawmill that would later become CLC.  Husband's testimony established that he replaced these pieces of equipment and

---

[1] It appears husband and his daughters from a previous marriage compiled the list of items and their corresponding values.

property, but husband failed to provide specific information as to which equipment was replaced with new equipment during the marriage or the source of funds used to replace each piece.

Since the beginning of the marriage, husband's efforts increased the value of CLC from the $330,000 he claims to be his separate property to a multi-million dollar business. This increase in value during the marriage constitutes marital property. Congdon v. Congdon, 40 Va. App. 255, 267, 578 S.E.2d 833, 839 (2003) ("Separate property that increases in value during the marriage 'shall be marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases, provided that any such personal efforts must be significant and result in substantial appreciation of the separate property'" (quoting Code § 20-107.3(A)(3)(a)). And throughout CLC's existence, husband repeatedly replaced equipment that was once his separate property with items that were acquired during the marriage. See Code § 20-107.3(A)(2)(iii) ("Marital property is . . . all other property acquired by each party during the marriage."). Given the complexity of CLC's business and the vast commingling of separate and marital funds, we hold the trial court did not err in concluding husband's articles of husband's separate property did not retain their separate classification amongst CLC's numerous assets and acquisitions. See McIlwain v. McIlwain, 52 Va. App. 644, 659, 666 S.E.2d 538, 546 (2008) (holding that separate funds deposited in a marital account "were so commingled with the marital funds" due to multiple significant withdrawals and deposits, thereby "treat[ing] the account as a unified source of funds to pay marital debt"). Accordingly, the trial court did not err in holding that CLC was entirely marital property.

Husband argues that even if CLC was entirely marital property until the parties' separation in 1997, the trial court nevertheless erroneously failed to classify as his separate property the appreciation in the value of CLC after the date of separation. Husband contends he

- 8 -

"made substantial and continuous efforts to enhance the value of CLC" and wife "played no role in these acquisitions nor in the appreciation in value of these assets."

Code § 20-107.3(A)(3)(a) specifically provides that the increase in value of separate property that occurs during marriage "shall be marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases." In other words, where the non-owning spouse contributes "significant" personal effort that "result[s] in substantial appreciation of the separate property," id., the otherwise separate property transmutes into hybrid property and the non-owning spouse may collect a portion of the marital increase as part of the equitable distribution, see Moran v. Moran, 29 Va. App. 408, 412, 512 S.E.2d 834, 835 (1999). See generally Martin v. Martin, 27 Va. App. 745, 751, 501 S.E.2d 450, 453 (1998) ("[W]here separate property can be retraced from commingled property, the increased value in that separate property is presumed to be separate, *unless* the non-owning spouse proves that contributions of marital property or personal effort caused the increase in value.").

The converse also holds true. "Generally, property acquired by one partner after the last separation when 'at least one of the parties intends that the separation be permanent' is not 'acquired . . . during the marriage' or as part of the marital partnership and will not be marital property, unless it was obtained, at least in part, with marital funds." Dietz v. Dietz, 17 Va. App. 203, 210, 436 S.E.2d 463, 468 (1993) (quoting Price v. Price, 4 Va. App. 224, 230, 355 S.E.2d 905, 908 (1987)).

> Property acquired by one partner totally separate and apart from the marital partnership does not imbue the other partner or spouse with rights and equities in such property. Where partnership efforts have contributed nothing to the acquisition or maintenance or preservation of the property, no basis exists for its being classified as a marital asset.

Id. Thus, where the parties have separated and one spouse contributes significant personal effort that results in substantial appreciation of the *marital* property, that spouse is able to claim the

- 9 -

increase in value of the marital property as his own separate property immune from equitable distribution. Cf. Tucker v. Wilmoth-Tucker, No. 2008-09-2, 2010 Va. App. LEXIS 199, at *15 (Va. Ct. App. Mar. 18, 2010) ("Any increase in value of [husband's] shares that occurred after the date of separation due to husband's personal efforts is husband's separate property."). The spouse claiming the increase in value as his separate property bears the burden of proof. See Gilman v. Gilman, 32 Va. App. 104, 120, 526 S.E.2d 763, 771 (2000).

Husband relies entirely on the testimony of his expert witness, Robert Raymond, and his appraisal report of CLC. That report calculated the value of CLC at the time of marriage in 1973 at $330,000 and concluded CLC's net worth had grown to approximately $2,500,000 at the time of separation in 1997. The report further computed CLC's value at the time of the 2005 proceedings to be approximately $5,700,000. Of the $3,200,000 increase in value between the time of the separation and the date of the 2005 proceedings, the report estimated that husband's active efforts in maintaining CLC accounted for approximately $2,487,000 in appreciation.

The evidence, viewed in the light most favorable to wife, supports a finding that husband failed to meet his burden of proving that the substantial appreciation in CLC's value was due solely to his significant personal efforts. As detailed in the report, Raymond analyzed "each piece of real estate [to] see when it was purchased" and "attempted to analyze the source of funds for [those] purchases." Indeed, the report attributed most of CLC's active appreciation to the acquisition of pieces of real estate. However, despite Raymond's reliance on information that "some of the other assets were purchased with [separate property in the form of] post-separation debt . . . or earnings from the corporation," none of husband's evidence supports such a conclusion. Raymond did not specify which properties he concluded were acquired with post-separation funds, and the record contains no supporting documentation. At most, the record indicates that the properties were acquired by "settlement statement[s]." Evidence of CLC's

income and cash flow statements shows husband may have had the means to acquire additional property after the date of separation, but husband cannot meet the burden of proving he actually used separate funds to make that acquisition based on mere speculation and conjecture.

Further, the record supports the trial court's implicit rejection of Raymond's testimony and report. See Stratton v. Stratton, 16 Va. App. 878, 883, 433 S.E.2d 920, 923 (1993) ("'[T]he finder of fact is not required to accept as conclusive the opinion of an expert.'" (quoting Lassen v. Lassen, 8 Va. App. 502, 507, 383 S.E.2d 471, 474 (1989))). As a starting point, the report "[v]alue[d] the premarital property, determine[d] if it increased in value between the marriage date and the separation date and then quantif[ied] the causation of such increase as to active or passive factors." The report assumed "increases in value of separate property during the marriage [were] separate property." However, Raymond confirmed that the source of his information regarding the premarital property was Schedule M, the list of fixed assets compiled by husband that "*estimated* the realizable value of each such asset." (Emphasis added). As discussed *supra*, the trial court affirmatively rejected Schedule M because husband's "memory does not appear to be reliable in this area." In other words, the report began with the assumption that the $330,000 in assets listed in Schedule M were separate property and retained their identity as separate property throughout CLC's existence, but the trial court ruled, and we affirm, that those assets were so commingled with marital funds that they lost their separate identity. Because the results of the report were "based, primarily, on different ways of looking at th[e] separate estate that existed on the date of marriage," credible evidence in the record supports the trial court's implicit rejection of husband's expert testimony. Without that evidence, husband did not meet his burden, as the non-owning spouse, of proving "that the increase in value was attributable to the contribution of [separate] property." Gilman, 32 Va. App. at 119, 526 S.E.2d at 770.

- 11 -

## 2. CLCA

Husband argues the trial court erred in classifying CLCA as entirely marital property because wife did not meet her burden of proving that marital funds secured the post-separation purchase of CLCA.

Husband purchased CLCA in 1999, three years after the parties separated, for $625,000. To make the down payment, husband issued two checks from CLC in the amounts of $25,000 and $50,000. Husband testified he intended to treat these payments as loans that he would eventually repay. To cover the remainder of the cost, husband arranged to borrow $750,000 from a bank. Husband signed the deed of trust both as president and representative of CLC and in his own personal capacity. Wife did not sign off on the loan. Husband testified that he initially wanted to borrow in excess of the purchase price so that CLCA would have working capital, but he ultimately decided to immediately repay the money CLC had contributed. Further, in addition to the real property and equipment located at the CLCA location, husband pledged as collateral four properties owned by CLC.[2] Husband testified that the entire $750,000 loan was paid off using funds from CLC and CLCA, though the record contains no documentation to support husband's claim.

Husband argues the $75,000 down payment from CLC did not contribute permanent value to the acquisition of CLCA and, thus, the fact that CLC was classified as marital did not transmute CLCA into marital property. Husband reasons that the $75,000 was a "loan" that was immediately paid back using excess proceeds from a $750,000 bank note he obtained using CLC real estate as collateral to cover the remainder of CLCA's purchase price. Husband further contends "both debts have been fully paid off" using funds "acquired by CLCA after separation."

_____

[2] Husband and wife originally owned two of the tracts, Eastview and Maxie. They conveyed the properties to CLC on April 2, 1997.

- 12 -

Thus, husband contends it was wife's burden to prove that marital funds were used to pay off the loan.

In opposition, wife argues she overcame the presumption of separate classification because funds from CLC, which the trial court had deemed marital, were used to acquire CLCA. Wife contends that without CLC's money, financial standing, and collateral, the bank loan would not have been made and CLCA would have no assets and no existence. To that end, wife asserts that the burden shifted back to husband to prove that a portion of CLCA became hybrid property. We agree with wife.

The property subject to classification is husband's stock in CLCA, which came into existence in 1983 when CLC became incorporated, and is presumptively separate property. See Dietz, 17 Va. App. at 211, 436 S.E.2d at 469 ("Code § 20-107.3(A)(2) does not expressly state that property acquired after the last separation shall be presumed to be separate property."). However, "[p]roperty acquired after separation is presumed to be separate property unless the party claiming otherwise demonstrates that it was obtained with marital funds." Luczkovich v. Luczkovich, 26 Va. App. 702, 712, 496 S.E.2d 157, 162 (1998). The use of marital property as collateral to secure a loan in order to purchase additional property constitutes an exchange because the transaction "compromis[es] the borrower's full ownership rights in [the] asset in order to use that asset as security for [the] loan." Gilman, 32 Va. App. at 118, 526 S.E.2d at 770. In other words, property acquired using the proceeds from a loan takes on the classification of any property used to secure that loan.

Here, husband used funds from CLC to make the $75,000 down payment for CLCA. The trial court rejected husband's testimony that this money was a loan because it held the "two checks . . . came from [CLC] *directly*." (Emphasis added). Husband provided no documentary evidence that calls this ruling into question. Indeed, the checks explicitly state that the funds

were to be used for the "down payment on [the] sawmill." Thus, CLC contributed $75,000 in marital property to the purchase of CLCA, rendering that portion of CLCA marital property.

Turning next to the $750,000 loan that comprised the remainder of the CLCA purchase price, we hold that once wife proved that marital property was used to secure the loan, it became husband's burden to prove that separate funds discharged the debt. "The discharge of a debt secured by an asset that results in an increase in equity in the asset constitutes an 'increase in value.'" Gilman, 32 Va. App. at 119, 526 S.E.2d at 770 (quoting Code § 20-107.3(A)(1)). "The increase in value of separate property during the marriage is separate property, unless marital property or the personal efforts of either party have contributed to such increases and then only to the extent of the increases in value attributable to such contributions." Code § 20-107.3(A)(1). "The non-owning spouse has the burden of proving that the increase in value was attributable to the contribution of marital property." Gilman, 32 Va. App. at 119, 526 S.E.2d at 770.

In Gilman, we held that once the husband proved that property acquired during the marriage was purchased "using loan proceeds that were [secured by] his separate property, the land was his separate property, and [the wife] had the burden of proving that marital funds were used to discharge the loans." Id. Thus, even though the disputed property was initially presumed to be marital, the burden shifted to husband because he proved that the property was actually acquired in an exchange under Code § 20-107.3(A)(1). Based on the record, we noted that wife "presented no evidence that marital funds were used to pay any portion of the balloon note[,]" and the husband was "scrupulous in not using marital funds to satisfy any of the monetary obligations incurred when purchasing his separate investment properties." Id. at 119-20, 526 S.E.2d at 771.

The converse holds true in this case. CLCA was presumptively husband's separate property because he purchased it after the parties separated, and wife was required to provide

sufficient evidence to prove otherwise.  However, wife met her burden by providing evidence that proved marital property was used as collateral to secure the loan required to cover the remainder of the purchase price.  Much like the wife in Gilman had to prove that marital funds discharged the loan on the once-presumptively marital property, it became *husband's* burden here to prove that separate funds were used to discharge the loan on the once-presumptively separate property.  The only evidence husband presented on this point was from his accountant, who merely stated that the loan had "been paid off."  The accountant did not elaborate as to how the loan was discharged.  Further, the record contains no ledgers or bank statements that show how the loan was repaid, if at all.  Mere speculation that income from CLCA was used to discharge the debt does not meet the burden of proof.  Because the burden of proof rested with husband once wife proved the loan was secured using marital property, the trial court did not err in finding that CLCA was marital property.

B.

VALUATION OF CLC

Husband's final assignment of error challenges the trial court's valuation of CLC. Specifically, husband contends the trial court erroneously ignored his evidence tending to prove that certain property CLC once owned was either worn out or expended.  Husband argues the 2009 valuation order expressly granted him the right to present such evidence to equitably reduce the value of CLC for property it no longer owned.  Husband further takes issue with the trial court's unexplained upward deviation from the 2005 appraisal, which increased the value of CLC from $5,369,665 to $5,377,491, a difference of $7,826.

"Code § 20-107.3(A) directs that the trial court value all property of the parties, but it does not define the term, 'value,' for equitable distribution purposes."  Howell v. Howell, 31 Va. App. 332, 338, 523 S.E.2d 514, 518 (2000).

- 15 -

> The court shall determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue. Upon motion of either party made no less than 21 days before the evidentiary hearing the court may, for good cause shown, in order to attain the ends of justice, order that a different valuation date be used.

Code § 20-107.3(A). The trial court's valuation is a finding of fact, and "[w]e [will] affirm if the evidence supports the findings and if the trial court finds a reasonable evaluation." Russell v. Russell, 11 Va. App. 411, 415-16, 399 S.E.2d 166, 168 (1990). The parties bear the burden of providing the trial court with sufficient evidence from which it can value their property. See Taylor v. Taylor, 5 Va. App. 436, 443, 364 S.E.2d 244, 248 (1988).

The parties do not challenge the trial court's decision to use the 2005 appraisals as the basis for valuing the separate and marital property. Contrary to husband's argument, however, the 2009 valuation order did not mandate any consideration of evidence that would tend to prove the value of CLC decreased due to the loss, sale or dissipation of any equipment, vehicles or other tangible personal property. Rather, the order simply granted husband "*the right to argue* that the value of the two corporate entities . . . should be reduced." (Emphasis added). Further, the order required husband to "provide counsel with copies of any documents supporting said loss, sale or dissipation." The only evidence husband submitted was a hand-generated spreadsheet of eight pieces of property that husband claimed were "broken down" or "removed by wife." Husband offered no documentation to prove his ownership in or the respective values of the listed properties. Husband therefore testified relying on his memory, and the trial court held that his "memory does not appear to be reliable in this area." Significantly, husband contends one Caterpillar Wheel Loader was "broken down" while another was "removed by wife," and thus had no value. However, he admitted that he had included the vehicles in CLC's

2007 Chapter 11 bankruptcy petition at their full values of $54,000 and $38,000.[3]  And, husband admitted on cross-examination that he did not actually observe wife take the property.  Because the trial court did not find husband's evidence credible, it was not required to reduce the value of CLC from its 2005 appraisal.

Further, we hold the trial court did not commit reversible error by failing to articulate a justification for the slight increase from the 2005 appraisal.  The entire marital assets are worth approximately $17 million.  The difference between the trial court's 2010 valuation and the 2005 appraisal is $7,826.  Such error, if any even exists, is *de minimis*.

III.

CONCLUSION

In summary, husband did not meet his burden of proving that his premarital property retained its separate identity despite the numerous transactions and replacements throughout CLC's existence.  Further, the trial court did not err in implicitly rejecting husband's expert evidence regarding his efforts in increasing the value of CLC after the parties' separation.  Without such evidence, husband did not meet his burden of proving the amount he claims CLC increased in value as a result of his significant efforts.  Second, husband was unable to meet his burden of proving that the loans used to purchase CLCA were repaid using separate funds, and thus CLCA retained its classification as marital property.  Finally, the trial court did not err in rejecting husband's evidence regarding the alleged diminutions in CLC's value since the 2005 appraisal.  Accordingly, we affirm the 2010 decree.

Affirmed.

---

[3] The bankruptcy petition was not included in the record, so it is beyond this Court's review.  However, the trial court considered the discrepancy in its letter opinion, and the record does not contain any indication that this was in error.

Powell, J., dissenting.

Although I agree with the majority that it is husband's initial burden to prove that the CLC stock was his separate property, I must respectfully dissent. I believe that the trial court erred in finding that husband had not met his burden of proving that CLC was his separate property. I disagree with the majority's analysis that husband's stock in CLC is presumptively marital because it was "acquired" during the marriage and that husband has the burden of tracing all of the separate assets of CLC because marital and separate property were commingled into newly acquired property.

The majority's focus on the incorporation of CLC is misplaced. Nothing in our jurisprudence holds that the act of incorporating a company during the marriage creates a "newly acquired property resulting in the loss of identity of the contributing properties." Code § 20-107.3(A)(3)(e). Rather, I would hold that the stock acquired by incorporation of a separately held business clearly falls within the definition of separate property, as it is "property acquired during the marriage in exchange for . . . separate property." Code § 20-107.3(A)(1)(iii). It has been recognized that such "[e]xchange provisions are construed liberally . . . to include any transaction where the owner gives away one asset and acquires another of roughly equal value." Brett R. Turner, 1 Equitable Distribution of Property 606 (3d ed. 2005); see also Sayer v. Sayer 492 A.2d 238, 239 (Del. 1984) (noting that "[t]he 'exchange' provision is intended to exclude from marital property only that which is 'swapped' for pre-marital assets"). Furthermore, by definition, the act of incorporation is merely the exchange of assets from a sole proprietorship to a corporation; it does not create any new property and the stock exchanged for clearly maintains the original character of the original property. Indeed, I fail to see how husband's ownership of all of the stock in the company is any different from husband's ownership of the company. The few states that have addressed this issue have all held that the act of incorporation has no effect

upon the classification of a property.  See, e.g., Dalrymple v. Dalrymple, 47 S.W.3d 920, 923 (Ark. Ct. App. 2001); Long v. Long, 743 A.2d 281, 289-90 (Md. Ct. Spec. App. 2000); In re Marriage of Phillips, 615 N.E.2d 1165, 1173-74 (Ill. App. Ct. 1993).  Accordingly, I would hold that the act of incorporating CLC is irrelevant to the classification of the CLC stock.

In my opinion, the proper focus must be on the date the unincorporated business was acquired.  "The character of property classified pursuant to Code § 20-107.3(A) is initially ascertained *as of the date that it is acquired*."  Wagner v. Wagner, 4 Va. App. 397, 404, 358 S.E.2d 407, 410 (1987) (emphasis added).

> Property that is acquired by either party before the marriage is separate property, Code § 20-107.3(A)(1)(i), subject to being transmuted into hybrid property -- that is, part marital and part separate -- (1) by virtue of an increase in value due to personal efforts or contributions of marital funds, Code § 20-107.3(A)(3)(a); or (2) by having been commingled with marital funds when the marital funds can be retraced, Code § 20-107.3(A)(3)(d); or (3) by being commingled with marital property into newly acquired property when the separate property can be retraced. Code § 20-107.3(A)(3)(e).

Moran v. Moran, 29 Va. App. 408, 411-12, 512 S.E.2d 834, 835 (1999).

Here, the evidence demonstrates that CLC was wholly owned by husband prior to the marriage.  Although the majority references the fact that "husband began a sawmill business in 1957," it does not mention the name of the business:  "Campbell Lumber Company."  Further, wife confirmed that CLC existed prior to the marriage and that it was owned and operated by husband. [4]

---

[4] I would further note that this Court has previously acknowledged that CLC existed at the time of marriage.  See Campbell v. Campbell, 49 Va. App. 498, 501, 642 S.E.2d 769, 771 (2007) ("CLC was worth approximately $330,000 at the time of the marriage").

Furthermore, because wife previously had the opportunity to object to the initial valuation of CLC in the previous appeal of this case, but failed to do so, the law of the case doctrine prevents either the trial court or the majority from questioning the value of CLC at the time of the marriage.

Moreover, I disagree with the majority's focus on the assets of the business as the underpinning for its position that husband has failed to meet his burden. In its analysis, the majority, like the trial court, focuses not on CLC as a whole, but on the individual assets allegedly owned by CLC at the time of marriage. Specifically, the majority relies upon husband's failure to "provide specific information as to which equipment was replaced with new equipment during the marriage or the source of funds used to replace each piece." By taking this approach, the majority ignores the fact that the property to be classified is CLC itself, not the individual assets of CLC.

Furthermore, by focusing on the fact that "throughout CLC's existence, husband repeatedly replaced equipment that was once his separate property with items that were acquired during the marriage," the majority ignores the plain language of Code § 20-107.3(A)(3)(d):

> When marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, such contributed property shall retain its original classification.

Clearly, the "property" at issue in this case is CLC as a whole, not the individual assets of CLC. In my opinion husband proved, and wife acknowledged, that CLC existed in an unincorporated form long before the marriage. Upon husband meeting his burden of proof, the burden shifted to wife to prove "that (i) contributions of marital property or personal effort were made and (ii) the separate property increased in value." Code § 20-107.3(A)(3)(a). However, as in Duva v. Duva, 55 Va. App. 286, 294-95, 685 S.E.2d 842, 846-47 (2009),

> the trial court did not consider marital funds losing its classification as marital property when commingled with the receiving property. It did not consider whether wife traced the marital funds. Thus, the trial court applied the incorrect standard in determining whether the property is separate, marital, or hybrid.

- 20 -

In that respect, we find the trial court erred. "As the Supreme Court has recognized, a trial court "'by definition abuses its discretion when it makes an error of law.'" Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998) (quoting Koon v. United States, 518 U.S. 81, 100, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996)).

As the trial court clearly erred, I would remand this matter, as well as the matter of

properly classifying CLCA, to the trial court to revisit its equitable distribution award.