COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Willis and Annunziata
Argued at Alexandria, Virginia


MICHAEL KAY MANN
                                              OPINION BY
v.          Record No. 0342-95-4    JUDGE ROSEMARIE ANNUNZIATA
                                              MAY 21, 1996
AFAF KANAZEH MANN


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                   Quinlan H. Hancock, Judge


            Lauren E. Shea (Sherman, Meehan & Curtin,
            P.C., on briefs), for appellant.

            Philip F. Hudock for appellee.



     The parties, Afaf Kanazeh Mann ("wife") and Michael Kay Mann
("husband"), were divorced by entry of a final decree, which
included an equitable distribution of the parties' assets.  Among
the assets distributed were two retirement plans in which the
husband participated through his employer.  The court awarded the
wife forty percent of the marital share of each of the two plans.
 On appeal, the husband contends that the court overstated the
value of the "marital share" of his defined contribution plan,
referred to as the Performance Sharing Plan ("PSP"), by failing
to treat as separate property the income earned passively during
the marriage on the amount of his premarital contributions to the
plan.[1]  The distribution of the defined benefit plan is not at
issue.  For the reasons that follow, we reverse.
_____
     [1]The wife filed a cross-appeal, the disposition of which
is addressed in a separate memorandum opinion.

A defined contribution plan is comprised of funds held in an account established by the employee through his employer. A defined contribution plan is one in which "the employee and the employer both make contributions to a retirement plan account, and the employee's benefits are expressed in terms of the present balance in his account." Brett R. Turner, Equitable Distribution of Property § 6.02 (2d ed. 1994); see also Defined Contribution Plans, Equitable Distribution Journal Vol.13, No.1, at 1-6 (Jan. 1996).[2] By contrast, a defined benefit plan defines an employee's benefits "as a certain amount per period of time." Id. Thus, upon retirement, a defined contribution plan gives an employee the funds remaining in his plan account, while "a defined benefit plan gives the employee a specific periodic benefit." Id.

Here, the parties stipulated that husband's PSP was worth $23,370 when the parties married and $163,467 when they

---

[2] Under the Internal Revenue Code, "the term `defined contribution plan' means a plan which provides for an individual account for each participant and for benefits based solely on the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." Types of defined contribution plans include tax-qualified profit-sharing plans, stock bonus plans, and 401(k) plans. IRAs (Individual retirement accounts) are also defined contribution plans, although they are not tax-qualified plans.

Equitable Distribution Journal, supra, at 1-2 (citation omitted).

separated. Based on these figures, the court classified husband's $23,370 pre-marital contribution as separate property. Although husband's accounting expert testified that the value of the husband's pre-marital contributions had grown to $61,097 during the marriage as a result of earnings attributable solely to those funds, the court declined to classify as husband's separate property the income passively earned on his $23,370 pre-marital contribution. The court determined the "marital share" of the PSP was $140,097 (i.e., $163,467 minus $23,370) rather than, as husband contended, $102,370 (i.e., $163,467 minus $61,097).

Husband contends classification of the PSP is controlled by Code § 20-107.3(A) and its tracing provisions.[3] Wife concedes

_____

[3]Code § 20-107.3(A) provides, in part:

> (1) Separate property [includes] all property, real and personal, acquired by either party before the marriage . . . . Income received from separate property during the marriage is separate property if not attributable to the personal effort of either party. . . .

> (2) Marital property [includes] . . . (ii) that part of any property classified as marital pursuant to subdivision A 3 . . . . All property including that portion of pensions, profit-sharing or deferred compensation or retirement plans of whatever nature, acquired by either spouse during the marriage, and before the last separation of the parties . . . is presumed to be marital property in the absence of satisfactory evidence that it is separate property. . . .

> (3) The court shall classify property as part marital property and part separate property

that, under Code § 20-107.3(A), passive income earned by or on separate property remains separately classified. However, she contends that retirement plans are not subject to the same classification and distribution rules applicable to non-retirement plan assets, because retirement plans are treated as a unique species of property under Virginia's equitable distribution law. See Code § 20-107.3(G); Keyser v. Keyser, 7 Va. App. 405, 412, 374 S.E.2d 698, 702 (1988). For this reason, she argues that husband's theory has no basis under Virginia law.

Indeed, the issue is one of first impression in Virginia.[4]
(..continued)
        as follows:

                *    *    *    *    *    *    *

        b. In the case of any pension,
profit-sharing, or deferred compensation plan
or retirement benefit, the marital share as
defined in subsection G shall be marital
property.

                *    *    *    *    *    *    *

        d. When marital property and separate
property are commingled by contributing one
category of property to another, resulting in
the loss of identity of the contributed
property, the classification of the
contributed property shall be transmuted to
the category of property receiving the
contribution. However, to the extent the
contributed property is retraceable by a
preponderance of the evidence and was not a
gift, such contributed property shall retain
its original classification.

[4]However, we note that husband's theory of classifying as separate the income earned passively by his separate contribution has been accepted in other equitable distribution jurisdictions. See Equitable Distribution Journal, supra, at 4-5; Thielenhaus v. Thielenhaus, 890 P.2d 925, 929-30 (Okla. 1995); White v.

This Court has described pensions as constituting an "unusual type of property," <u>Gamble v. Gamble</u>, 14 Va. App. 558, 565, 421 S.E.2d 635, 640 (1992).[5] However, we find no support for the view that the legislature intended to exclude retirement plans, or any other specific type of property, from the overall equitable distribution scheme. <u>See</u> <u>Banagan v. Banagan</u>, 17 Va. App. 321, 325, 437 S.E.2d 229, 231 (1993) ("[W]hen pension benefits comprise a `portion of the pool of marital assets,' they are clearly contemplated by the `scheme' of Code § 20-107.3, which is intended to justly distribute the `marital wealth of the parties.'") (citations omitted).

That scheme is set forth in Code § 20-107.3(A), which addresses the classification of property, including retirement plans, as either separate, marital, or part marital and part separate. The same code section sets forth the "tracing" provisions applicable to assets which are part marital and part separate. <u>See</u> Code § 20-107.3(A)(3). Under these tracing provisions, a retirement benefit which is part marital and part separate, is classified in accordance with the definition of

(..continued)
<u>White</u>, 521 N.W.2d 874 (Minn. Ct. App. 1994); <u>Getter v. Getter</u>, 627 N.E.2d 1043 (Ohio Ct. App. 1993); <u>Parker v. Parker</u>, 610 So. 2d 719 (Fla. Dist. Ct. App. 1992); <u>Brandenburg v. Brandenburg</u>, 617 S.W.2d 871 (Ky. Ct. App. 1981).

[5]Pension benefits are considered unique in that, in most cases, the pension benefits are "future oriented" and not "readily susceptible to valuation or distribution at the time of an evidentiary hearing." <u>Gamble</u>, 14 Va. App. at 565-66, 421 S.E.2d at 640.

"marital share" set forth in § 20-107.3(G). Code § 20-107.3(A)(3)(b). Code § 20-107.3(G)(1) defines the marital share of a pension as "that portion of the total interest, the right to which was earned during the marriage and before the last separation of the parties." That portion is considered "marital property" under § 20-107.3(A)(3)(b).

Wife contends that the phraseology, "total interest . . . earned during the marriage," has a clear meaning, requiring the inclusion as marital property of <u>all</u> funds earned by the PSP during the marriage, irrespective of the separate nature of the funds contributed. However, wife's reading of Code §§ 20-107.3(A)(3)(b) and -107.3(G) ignores the remaining provisions of the equitable distribution statutory scheme which, upon proof, treats as separate all other species of separate property, together with any increases in value passively earned by or on the separate property during the marriage. <u>See</u> Code §§ 20-107.3(A)(1), -107.3(A)(3)(a).

When read in context, the provisions respecting the classification of pension funds compel giving similar treatment to income passively earned during the marriage from separate funds contributed to a defined contribution plan. Under Code § 20-107.3(A)(2), pension funds are characterized as "presumptively" marital and only remain so classified <u>in the absence of satisfactory evidence that the property is separate</u>. This provision is conceptually equivalent to Code

§ 20-107.3(A)(3)(d), which provides that separate property commingled with marital property retains its original classification if it can be retraced by a preponderance of the evidence.

Furthermore, the "pro-ration" of the PSP urged by husband is consistent with the treatment accorded to pension funds held in defined benefit plans. Under Virginia law, it is well established that the marital portion of a defined benefit plan is distinguished from the separate portion by the application of a fraction, the numerator of which represents the total time the pensioner is employed during the parties' marriage, and the denominator of which represents the total time the pensioner is employed through the date of retirement. See, e.g., Mosley v. Mosley, 19 Va. App. 192, 198, 450 S.E.2d 161, 165 (1994); Primm v. Primm, 12 Va. App. 1036, 1037, 407 S.E.2d 45, 46 (1991). The fraction diminishes the marital share in relation to the number of years that pre- and post-marital contributions are made.[6] Thus, as applied, the fraction effectively excludes from the marital share the income earned by pre- and post-marital contributions to the pension.[7]

---

[6]Because there is no fund account to prorate between marital and separate, the time during which benefits were earned is prorated instead. See Turner, supra, at § 6.10. Applying such a fraction to a defined contribution plan could lead to incongruous results, and such an approach is not generally used. See id. at n.221. Proration of a defined contribution plan is typically accomplished by tracing separately contributed funds. See supra, note 3.

[7]The size of the marginal difference will, of course, vary

Different treatment of a defined contribution plan follows neither from the nature of the plan, which is characterized by readily identifiable fund values during the life of the fund, nor from the language of the statute. The trial court, therefore, erred in failing to classify as separate the income earned passively by husband's separate contributions.

In this case, stipulated evidence established the value of husband's separate contributions made before the marriage. Expert testimony established the value by which the separate contributions increased passively. On appeal, wife contends that the method used by husband's expert to calculate the increased value of husband's separate contributions at the date of separation was erroneous. However, wife failed to object to husband's method of calculation at trial and is, therefore, procedurally barred from raising the issue on appeal. See Rule 5A:18.[8] Accordingly, the evidence of value presented to the trial court on this issue stands admitted.

Accordingly, we reverse and remand for entry of an equitable distribution order consistent with this opinion. Because of the statutory interplay between equitable distribution and support awards, the trial court will have to reconsider its support award

(..continued)
according to the size of the fraction.

[8]We note that wife's objection at trial addressed only the issue of whether Virginia law permitted the court to classify as separate property the income earned passively by husband's separate contributions, an issue we resolve in favor of husband.

in light of this opinion.

                                        <u>Reversed and remanded.</u>