COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


IAN KENNETH ACKERMAN

                                  MEMORANDUM OPINION[*] BY
v.    Record No. 1478-01-2        JUDGE SAM W. COLEMAN III
                                     JUNE 11, 2002
CAROL MICHELLE PFEIFFER, N/K/A
 CAROL M. ALLEN


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Paul M. Peatross, Jr., Judge

Patricia M. Brady for appellant.

Deborah S. O'Toole (Cowan & Owen, P.C., on
brief), for appellee.


Ian Kenneth Ackerman, husband, appeals a decision of the
trial judge to enter an amended Qualified Domestic Relations Order
(QDRO) dividing the TIAA-CREF retirement benefits account of Carol
Michelle Pfieffer, now known as Carol M. Allen, wife.[1] The
primary issue on appeal is whether the trial judge erred in
finding that the parties intended the "marital share" of the
retirement account to exclude the earnings on the pre-marital

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

     [1] In his opening brief, husband presents arguments regarding
the amended QDRO for the VALIC account. However, the amended
QDRO for the VALIC account was entered on March 13, 2001.
Husband's notice of appeal indicates that he is appealing the
QDRO and final order which were both entered on May 7, 2001.
Therefore, we will not consider the arguments concerning the
amended VALIC QDRO.

principal.  Husband further contends the trial judge erred in failing to award him attorney's fees.  We affirm the decisions of the trial judge.

### BACKGROUND

> Under familiar principles we view [the] evidence and all reasonable inferences in the light most favorable to the prevailing party below.  Where, as here, the court hears the evidence ore tenus, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it.

Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986).

Husband and wife married in 1992.  In 1999, the parties separated, and on June 26, 1999, they entered into a property settlement agreement (PSA) drafted by husband.  Neither party was represented by counsel at the time they entered into the PSA.  In early 2000, the parties signed an amendment to the PSA (amended agreement), which was drafted by wife's attorney.

The PSA contained the following paragraph regarding the division of the parties' retirement accounts.

> It is mutually agreed that the marital portion of both retirement accounts ([wife]'s TIAA-CREF account and [husband]'s VALIC account) will be divided equally.  The marital portion is defined as all accumulations (employee and employer contributions, interest and earnings) from the beginning of marriage (June 13, 1992) through the date of separation (June 24, 1999).

Paragraph C of the amended agreement provides, in part:

> Pension and Retirement Accounts:  The
> parties agree that [husband] shall be
> entitled to 1/2 of the marital share of
> [wife]'s TIAA-CREF retirement account,
> including contributions and earnings on the
> marital share accrued from the date of the
> marriage until the date of the final
> separation of the parties, June 24, 1999.
> [Wife] shall be entitled to 1/2 of the
> marital share of [husband]'s VALIC
> retirement account including contributions
> and earnings on the marital share accrued
> from the date of marriage until the date of
> the final separation of the parties less
> $15,000.

On March 22, 2000, the trial judge entered two QDROs dividing the parties' retirement accounts.  Both QDROs were endorsed by husband without objection.  After entry of the QDROs, VALIC requested a signed certification from the parties acknowledging the actual date of division of the account because the May 22, 2000 QDRO contained conflicting dates of separation of the parties.  Husband refused to sign an acknowledgment, and wife filed a motion for entry of an amended QDRO directing division of the VALIC pension funds.

Husband filed a response to wife's motion, stating that he refused to cooperate with the division of the VALIC funds until the QDRO providing for the division of the TIAA-CREF retirement funds was amended to comply with the PSA and amended agreement. Husband also filed a motion asking the court to revoke the entry of the May 22, 2000 TIAA-CREF QDRO and to file an amended QDRO dividing this account in accordance with the parties'

- 3 -

agreements. Husband contended that both QDROs should have included interest on the pre-marital contributions as part of the marital portion of the accounts to be divided.

The trial judge found the language of the PSA and the amended agreement "to be ambiguous." On February 26, 2001, he heard parol evidence on the issue. On March 13, 2001, the trial judge issued a letter opinion indicating that he had considered the parol evidence and the written correspondence between the parties "to determine the meaning of the language in the [a]greement." The trial judge found the language of the PSA and the amended agreement "concerning the interest accruing on the retirement accounts to be consistent." The trial judge also interpreted the terms "marital portion" and "marital share" "to have the same meaning." The trial judge found:

> The marital share of the retirement accounts consists of contributions, both by the employer and the employee, made from the date of marriage to the date of final separation and earnings on those contributions accruing from the date of marriage to the date of separation. The marital share does not include principal in the retirement accounts contributed prior to the marriage or interest accruing on those contributions. The Court finds that the parties intended this interpretation of the language of the Agreements and that there was a meeting of the minds.

The trial judge ordered the entry of amended QDROs reflecting his rulings. The trial judge entered the amended QDRO for the VALIC account on March 13, 2001. On April 9, 2001,

- 4 -

husband filed a motion to reconsider. On May 7, 2001, the trial judge entered the final order reflecting his rulings, and he entered the amended QDRO for the TIAA-CREF accounts. Husband appeals the May 7, 2001 court order and the May 7, 2001 QDRO.

## ANALYSIS

Husband contends the PSA and amended agreement "are clear" that the principal existing in the retirement accounts at the date of the parties' marriage is not part of the marital share. Husband also asserts, however, that neither the PSA nor the amended agreement "clearly excludes interest and earnings on the pre-marital share." Indeed, husband contends the PSA specifies that "all" contributions, interest and earnings are to be included in the marital share and that the agreements contained a "broad and expansive definition of marital portion."

"Property settlement agreements are contracts subject to the same rules of formation, validity, and interpretation as other contracts." Bergman v. Bergman, 25 Va. App. 204, 211, 487 S.E.2d 264, 267 (1997). Contract provisions are not rendered ambiguous "merely because the parties disagree as to the meaning of the language employed by them in expressing their agreement." Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984). Whether a contract provision is ambiguous is a matter of law, not of fact. Id.

"[W]hen pension benefits comprise a 'portion of the pool of marital assets,' they are clearly contemplated by the 'scheme'

- 5 -

of Code § 20-107.3, which is intended to justly distribute the 'marital wealth of the parties.'" Banagan v. Banagan, 17 Va. App. 321, 325, 437 S.E.2d 229, 231 (1993) (citations omitted). Code § 20-107.3(G)(1) provides, in part, that a court "may direct payment of a percentage of the marital share of any pension, profit-sharing or deferred compensation plan or retirement benefits, whether vested or nonvested, which constitutes marital property . . . ." The statute defines "marital share" as "that portion of the total interest, the right to which was earned during the marriage and before the last separation of the parties . . . ." Code § 20-107.3(G)(1). Separate property is "all property, real and personal, acquired by either party before the marriage." Code § 20-107.3(A)(1). Code § 20-107.3(A)(3)(d) provides that separate property commingled with marital property retains its original classification if it can be retraced by a preponderance of the evidence.

> Under Virginia law, it is well established that the marital portion of a defined benefit plan is distinguished from the separate portion by the application of a fraction, the numerator of which represents the total time the pensioner is employed during the parties' marriage, and the denominator of which represents the total time the pensioner is employed through the date of retirement. The fraction diminishes the marital share in relation to the number of years that pre- and post-marital contributions are made. Thus, as applied, the fraction effectively excludes from the

> marital share the income earned by pre- and
> post-marital contributions to the pension.

Mann v. Mann, 22 Va. App. 459, 464-65, 470 S.E.2d 605, 607-08
(1996) (citations and footnotes omitted) (emphasis added).
Similarly, in this case, the passive income, or interest, earned
on the pre-marital, separate property contributions of husband
and wife to their retirement accounts is not subject to division
by the trial judge as marital property.

In addition, the evidence supports the conclusion that the
parties did not intend to include interest and earnings on their
pre-marital contributions to their retirement accounts in the
marital portion to be divided. In a letter dated September 30,
1999, husband wrote to wife, "The division of our retirement
balances based on amounts accumulated during our marriage was
what I thought would be a likely arrangement if we went through
a court divorce." (Emphasis added.) Furthermore, in a letter
dated August 5, 1999 from husband to wife, husband wrote, "Feel
free to have your attorney change the language [of the division
of the marital portion of the retirement assets] if you so
desire for my review and signature." Husband later signed the
amended agreement which specified that "marital share" included
"contributions and earnings on the marital share accrued from
the date of the marriage until the date of the final separation
of the parties, June 24, 1999." Thus, by signing the amended
agreement, husband agreed that the interest earned on wife's

- 7 -

pre-marital, separate contributions to her retirement accounts was not to be included in the "marital share." Moreover, the amended agreement stated that the amended agreement and the PSA would be construed in accordance with Virginia law, which provides, in this case, that the interest earned on the pre-marital contributions of parties to their retirement accounts is separate property. See id.

Husband testified at the hearing that, at the time he signed the amended agreement, he believed "marital share" meant "the same as the original agreement, and that was all accumulations after beginning balances at the point of our marriage, June '92, meaning all employee and employer contributions, all interest and all earnings that accumulated without qualification from June '92 through June '99." This statement indicates that husband did not intend that the marital share would include the interest earned on wife's pre-marital contributions or wife's pre-marital contributions to her pension account. Furthermore, wife testified that she understood the parties intended to divide the pension accounts "in accord with what the law typically calls for, which is equal division of the marital portion of the accounts." Wife also stated that she understood and intended "[t]hat we would have a fifty-fifty split of what was contributed to the accounts during the period of the marriage and interest and accumulation on those contributions only, but not interest on the pre-marital

- 8 -

contributions."  In a letter to her attorney dated December 14, 1999, wife wrote, "My intention is to exclude the interest and accumulation on the contributions that were made prior to marriage."

In addition, husband signed the May 22, 2000 QDROs without objection.  The May 22, 2000 QDROs did not indicate that interest earned on pre-marital contributions to the retirement accounts was part of the "marital share."  Accordingly, we affirm the trial judge's rulings and his entry of the amended QDRO for the TIAA-CREF account.

"An award of attorney's fees rests within the sound discretion of the trial court."  Coady v. Strategic Resources, Inc., 258 Va. 12, 18, 515 S.E.2d 273, 276 (1999).  On this record, we find that the trial judge did not abuse his discretion in refusing to award husband his attorney's fees.

For these reasons, we affirm the judgment of the trial judge.

Affirmed.