# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Chief Judge Decker, Judges Humphreys and O'Brien
Argued by videoconference


MICHAEL R. CRAWLEY, SR.

           MEMORANDUM OPINION[*] BY
v.  Record No. 0234-21-2    JUDGE MARY GRACE O'BRIEN
            DECEMBER 7, 2021

PATRICIA PAIGE CRAWLEY


FROM THE CIRCUIT COURT OF NEW KENT COUNTY
B. Elliott Bondurant, Judge

Janipher W. Robinson (Robinson and Greene, on briefs), for
appellant.

Joseph E. Blackburn, Jr. (Blackburn, Conte, Schilling & Click, P.C.,
on brief), for appellee.


Michael R. Crawley, Sr. ("husband") contests the circuit court's jurisdiction to recalculate

the marital share of retirement benefits owed to his former wife, Patricia Paige Crawley ("wife").

For the following reasons, we hold that the court properly exercised its jurisdiction under Code

§ 20-107.3(K)(4) and affirm.

## BACKGROUND

Husband and wife married in 1987 and divorced in April 1999.  While married, both parties

were employed and accrued retirement benefits.  Wife had a military pension, and husband had a

pension with the Richmond Retirement System ("RRS") through his employment with the city's

fire department.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The 1999 divorce decree reserved the issue of equitable distribution. In January 2004, the court entered an agreed order for equitable distribution that divided each party's pension in mirroring provisions:

> 6. The [h]usband shall receive 50% of the [w]ife's military retirement . . . from the date of marriage to the date of the final decree for divorce.

> 7. The [w]ife shall receive 50% of the [h]usband's retirement with the City of Richmond Fire Department . . . from the date of marriage to the date of the final decree for divorce.

On April 1, 2005, husband entered a Deferred Retirement Option Program ("DROP") that allowed him to defer receipt of unreduced RRS retirement benefits for up to five years while continuing active employment. Husband participated in the program through March 31, 2010. During that time, RRS deposited approximately $3,000 per month into a DROP retirement account for him. The deposits equaled what husband would have collected as monthly pension payments if he had retired instead of entering DROP. He did not accrue any additional retirement benefits after April 1, 2005, and his effective date of retirement for purposes of determining creditable months of service remained April 1, 2005. When husband left the program in March 2010, RRS rolled his DROP account containing $177,948.04 into an IRA.

Wife filed a motion to show cause in May 2011 and claimed that, although husband had been receiving RRS retirement benefits, she had not received her 50% portion of the marital share as required by the 2004 equitable distribution order. After an August 2011 hearing, the court declined to find husband in contempt but entered an order purporting to calculate wife's share of husband's pension.

In that August 2011 order, despite finding that husband's monthly payment obligation to wife became effective "beginning April 1, 2010, the date of his retirement," the court used an earlier hypothetical retirement date — October 1, 1999 — to determine the amount he owed. First, the

court calculated husband's "average final compensation" by averaging his income from 1996, 1997, and 1998, as if husband had retired in 1999. Based on this average, the court found that the marital share of husband's monthly retirement payment would be $779.97, and wife's 50% interest would be $389.98. The court then factored in certain "early retirement reductions," which reduced the marital share to $623.87, and it correspondingly reduced wife's 50% interest to approximately $312. Thus, the court concluded that $312 was wife's "share of [husband's] early retirement."

However, before the hearing, husband had communicated with RRS to determine "the amount of [his] retirement benefits had [he] retired on October 1, 1999." In a June 2011 letter, the Deputy Director of RRS advised that husband was "not eligible for retirement" as of October 1, 1999, and therefore RRS was "unable to calculate" his retirement benefits as of that date.

On January 27, 2020, husband filed a show cause motion contending that wife violated the 2004 equitable distribution order by not paying him 50% of the marital share of her military pension. In response, wife acknowledged owing husband the money but also contended that she had not received her share of husband's $177,948.04 pension funds from DROP.

At the show cause hearing, Kia Johnson, an RRS employee, testified that husband began working for the city on March 31, 1980. Johnson stated that although the August 2011 order used October 1, 1999, as husband's retirement date, he would "not have had enough creditable service to have retired on that date." Johnson stated that for purposes of RRS, husband's effective retirement date was April 1, 2005, when husband elected to participate in DROP, which allowed him to defer receipt of unreduced retirement benefits while continuing his employment.

The court found that the August 2011 order erroneously "calculated [wife's] interest in [husband's] retirement as if he retired early on October 1, 1999," and it held that because the August 2011 order did not accurately reflect the negotiated agreement set forth in the 2004 equitable distribution order, it was incorrect. The court ruled that wife was entitled to 50% of the marital

share of husband's retirement, as calculated using a fraction "based on the amount of time [husband] was employed during the marriage and the total time [he was] employed through the date of retirement," relying in part on Mann v. Mann, 22 Va. App. 459 (1996). In applying the fraction, the court found that the numerator was 143, reflecting the number of months they were married during husband's service from May 9, 1987 (the date of marriage) to April 14, 1999 (the date of divorce). The denominator was 300, reflecting the total number of months of husband's service from March 31, 1980 until April 1, 2005. This fraction calculated the marital share — that portion of husband's total retirement benefit earned during the marriage. Fifty percent of that share was 23.83% of husband's total retirement benefits.

Applying this percentage to the monthly payments of $2,999.02 that husband had received after his effective retirement date of April 1, 2005, the court determined that wife was entitled to $130,069.30. The court granted husband "a credit of $38,064.00 in payments he made to [wife] pursuant to the incorrect calculation" under the August 2011 order. The court also held that wife owed husband $4,655.75 from her military pension.[1] Accounting for the credit and offset, the court ruled that husband owed wife a balance of $87,349.54. Finally, the court found that husband's monthly retirement benefit decreased to $700 as of July 1, 2020, when he turned sixty-five; using the same fraction, the court ordered him to pay wife $161.81 per month thereafter. The court entered a final order reflecting these rulings on January 26, 2021.

ANALYSIS

Husband contests the court's jurisdiction to enter the January 2021 order. He contends that the order was void because it was entered more than twenty-one days after the August 2011 order, in violation of Rule 1:1.

---

[1] This amount was determined "by agreement of the parties" using a similar methodology for calculating the marital share of wife's military pension.

Husband's assignment of error raises a question of law concerning statutory interpretation, and therefore, we review *de novo* the court's jurisdiction to interpret and modify the prior order. See Craig v. Craig, 59 Va. App. 527, 539 (2012); see also Navas v. Navas, 43 Va. App. 484, 487-88 (2004). In so doing, we defer to the court's subsidiary factual findings that are not plainly wrong. See Collins v. First Union Nat'l Bank, 272 Va. 744, 749 (2006).

Rule 1:1 provides that "[a]ll final judgments, orders, and decrees . . . remain under the control of the trial court and may be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." However, the General Assembly provided a limited statutory exception to Rule 1:1 relating to the equitable distribution of retirement benefits. Code § 20-107.3(K)(4) grants a trial court

> the continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section, including the authority to: . . .
>
> [m]odify any order . . . intended to affect or divide any pension . . . or retirement benefits . . . to revise or conform its terms so as to effectuate the expressed intent of the order.

See Turner v. Turner, 47 Va. App. 76, 80 (2005) (affirming entry of an order calculating the division of the husband's pension because it "effectuate[d] the expressed intent" of a prior equitable distribution order awarding the wife 50% of the marital share (quoting Code § 20-107.3(K)(4))).

Code § 20-107.3(K)(4) does not authorize a court to modify the substantive terms of an equitable distribution order or "adjust its terms in light of the parties' changed circumstances." Caudle v. Caudle, 18 Va. App. 795, 798 (1994). A court cannot use Code § 20-107.3(K)(4) to "enter an order changing a critical term of the equitable distribution." Jackson v. Jackson, 69 Va. App. 243, 251 (2018).

For example, modifications that alter the "timing or amount of payments . . . exceed the authority granted under Code § 20-107.3(K)(4)." Turner, 47 Va. App. at 80 (quoting Hastie v.

- 5 -

Hastie, 29 Va. App. 776, 781 (1999)); see Fahey v. Fahey, 24 Va. App. 254, 257 (1997) (reversing an amended qualified domestic relations order that divided a retirement account based on its present increased value, rather than using an earlier valuation date expressed in the equitable distribution order, because the court lacked "authority to substantively modify its order simply to redress [the] changed circumstance" of the account's increased value).

Here, the 2004 equitable distribution order did not provide a method for calculating wife's marital share of husband's retirement benefits; it merely awarded her "50% of the [h]usband's retirement . . . from the date of marriage to the date of the final decree for divorce."

Code § 20-107.3(G)(1) defines "marital share" as "[t]hat *portion* of the *total interest*, the right to which was earned during the marriage and before the last separation of the parties." (Emphasis added). Because the marital share is a "portion" of the "total interest," determining the marital share requires calculating the total interest, which in turn requires knowing the spouse's entire duration of employment. The time of employment extends "through the date of retirement." Mann, 22 Va. App. at 465; see also Robinette v. Robinette, 10 Va. App. 480, 485 (1990) (stating that the "marital share" includes funds "paid or to be paid upon cessation of employment").

In Turner, this Court stated that the statutory definition of "marital share" is "mandatory and can be implemented by using a simple formula in the form of a fraction." 47 Va. App. at 81. "The number of years that the spouse was in the pension plan while in the marriage serves as the numerator[,] and the total number of years in the pension plan serves as the denominator." Id.; see also Primm v. Primm, 12 Va. App. 1036, 1037 (1991). This fraction is known as the "coverture fraction." See Lewis v. Lewis, 53 Va. App. 528, 532 n.2 (2009) (stating that, for purposes of determining the marital share of retirement benefits, the coverture fraction consists of the "time during the marriage that the spouse was employed by the company providing the benefit (the

numerator) divided by the total time of the spouse's employment with that company (the denominator)").

At the 2020 show cause hearing, the court found that the August 2011 order used an incorrect retirement date and therefore did not follow the parties' agreement set out in the 2004 equitable distribution order. The record and applicable legal authority support this finding.

The August 2011 order calculated the marital share of husband's retirement benefits as if he retired on October 1, 1999. However, husband's effective retirement date was April 1, 2005, when he entered DROP. By using an incorrect retirement date, the August 2011 order miscalculated the "total interest" of husband's retirement, and as a result miscalculated both the marital share and wife's 50% portion thereof. See Code § 20-107.3(G)(1). Accordingly, the August 2011 order misapplied the definition of "marital share" in the equitable distribution statute and contravened the 2004 equitable distribution order.

After determining the August 2011 order was incorrect, the court entered a new order calculating the marital share of husband's retirement benefits using his effective retirement date of April 1, 2005, which was not in dispute. Because Code § 20-107.3(K)(4) gave the court the authority to "[m]odify any order" dividing retirement benefits "to revise or confirm its terms so as to effectuate the expressed intent of the order," the court had jurisdiction to enter the January 2021 order.

The court's use of the coverture fraction to determine wife's benefits was a proper exercise of its jurisdiction because it did not substantively modify any term of the 2004 equitable distribution order. See Turner, 47 Va. App. at 81-82 (affirming entry of an order under Code § 20-107.3(K)(4) that "did not alter the critical terms of the equitable distribution order" but "suppl[ied] the denominator in the equation to determine the marital portion of the pension"). Instead, it

effectuated the parties' intent to give wife 50% of the marital share of husband's retirement, not a different share calculated with an incorrect retirement date.

Even assuming that divorcing spouses can agree to a different valuation date for the equitable distribution of retirement benefits, the facts do not support using October 1, 1999, the valuation date referenced in the 2004 equitable distribution order. When husband wrote to RRS in June 2011 requesting to know "the amount of [his] retirement benefits had [he] retired on October 1, 1999," he learned that he was "not eligible for retirement on such date" and therefore RRS was "unable to calculate" his retirement benefits as of that date. Husband's ineligibility for retirement benefits as of October 1, 1999, thus supports a finding that the August 2011 order was incorrect.

Because the January 2021 order effectuated the expressed intent of the 2004 equitable distribution order, the court had jurisdiction to enter it under Code § 20-107.3(K)(4).

Affirmed.