COURT OF APPEALS OF VIRGINIA

Present:   Judges Chaney, White and Senior Judge Annunziata
Argued at Fairfax, Virginia


STEVEN E. VIVIRITO

                                                      MEMORANDUM OPINION* BY
v.        Record No. 0026-23-4                        JUDGE ROSEMARIE ANNUNZIATA
                                                      MAY 21, 2024
ANNE MARIE VIVIRITO


                   FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                                  John M. Tran, Judge

            Carl R. Schoenherr (Curran Moher Weis, P.C., on briefs), for
            appellant.

            Susan M. Butler (ShounBach, on brief), for appellee.


        Steven E. Vivirito (husband) appeals a final order of divorce, challenging the circuit court's

interpretation of the parties' marital agreement and division of his pension benefits.  Husband

argues that the circuit court failed "to adhere" to the terms of the marital agreement when it

determined the equitable distribution award for his retirement because the circuit court erroneously

calculated Anne Marie Vivirito's (wife) share.  He further contends that by using an incorrect

formula, the circuit court erred by determining the amount owed to wife since their separation.

Finally, husband asserts that the circuit court erred by awarding attorney fees to wife.  We find no

error and affirm the circuit court's judgment.

                                      BACKGROUND

        "When reviewing a trial court's decision on appeal, we view the evidence in the light

most favorable to" wife as the prevailing party, granting her "the benefit of any reasonable

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

inferences." *Payne v. Payne*, 77 Va. App. 570, 579 n.1 (2023) (quoting *Nielsen v. Nielsen*, 73 Va. App. 370, 377 (2021)).  Husband and wife married on May 24, 1980, and separated on October 6, 2000.  Before they reconciled and resumed cohabiting as husband and wife, they entered into a marital agreement dated October 26, 2002.  The agreement indicated that they intended to treat it "as if it were a pre-marital agreement, so that all their present and future assets of whatever nature shall be treated as the separate assets of either" husband or wife.

As pertinent here, the marital agreement defined "[p]revious retirement assets" as those "retirement assets and/or benefits" in the name of either party as of October 6, 2000, and "[n]ew retirement assets" as those "retirement assets and/or benefits" earned by either party after October 6, 2000.  Acknowledging that neither husband nor wife was dividing the retirement assets at the time of the agreement, it further provided that if the parties separated "in the future, the portion of these [previous retirement] assets that are marital (May 24, 1980 to October 6, 2000) shall be divided equally."  Husband and wife confirmed that "the actual transfer of payments under a defined benefit pension plan [would] not take place until the owner of the plan actually retires"; husband was still working when they signed the agreement.  The agreement further provided that any new retirement assets earned by a party would remain "that party's sole and separate property."  "[I]n the event of any marital separation," each party would "be the sole and separate owner of all of his or her pension and other retirement assets and the other party accordingly waives all rights in such plans and accounts."  The agreement also provided that "[i]n the event either party breaches this agreement and a judicial decision is entered in favor of the other party, the party who does not prevail agrees to pay all of the counsel fees and other costs incurred in the matter by the prevailing party."

On September 21, 2019, the parties separated again, and wife subsequently filed a complaint for divorce, requesting that the circuit court affirm, ratify, and incorporate the marital

agreement into an order.[1]  Husband filed an answer and counterclaim, requesting equitable distribution because the parties had "accrued significant marital debt, and marital property" since they entered into the marital agreement.  In response, wife filed an answer and moved for an award of attorney fees and costs.

At the equitable distribution hearing, the parties presented evidence of husband's pension through Northrop Grumman, where he had worked from June 25, 1979, until June 30, 2013.  Husband selected a 100% joint survivorship benefit when he retired; the parties did not discuss the cost of that selection at the time.  At trial, wife requested that the parties divide the cost equally, whereas husband argued that wife should be responsible for the entire cost.  Wife asked the circuit court to "follow the marital agreement" and award her "50 percent of his pension" for the agreed-upon years, as reflected in their agreement.  She also asked the circuit court to determine the amount of arrears owed for her share since the date of separation.

Husband agreed that wife was entitled to a portion of his pension but maintained that wife should bear the cost of the survivor annuity.  He explained that his pension had several "parts" to it because of a merger between Grumman and Northrop Grumman, the transition between the two companies, and the changes in the benefits.  Part A of his pension "ran through" June 30, 2003.  Parts B and C began on July 1, 2003, and continued through June 30, 2008.  Husband had to choose either Part B or C, and he chose Part C because he received a greater benefit amount.  Part D started on July 1, 2008.  Husband admitted that he had not paid "any portion" of his pension to wife since their separation in 2019.

---

[1] Wife also requested that the "Addendum to Marital Agreement," dated August 2, 2004, be affirmed, ratified, and incorporated into an order; the sole purpose of the addendum was to "remove the provision on spousal support set forth in paragraph 5(a) of the said Marital Agreement and to substitute a mutual waiver of spousal support."

Both parties acknowledge that a "huge portion of the gains" on husband's pension accrued after October 6, 2000. Wife argued that her interest in husband's pension plan should be "based on the agreement" and a coverture fraction, with the numerator as the number of the months defined by the agreement and the denominator as the total number of months of service. Wife claimed that husband was trying "to freeze his pension and use the frozen benefit rule," as used with military retirement. Husband countered that the language of the agreement did not allow wife a portion of his retirement that was "outside the marital window." Husband argued that wife was entitled to receive only the marital share of Part A of his pension benefit and not Parts C or D because they were earned after October 6, 2000.

Both parties requested an award of attorney fees. The circuit court acknowledged the marital agreement provided for an award of attorney fees to the prevailing party.

Although the circuit court found that "both parties['] interpretation of the agreement [was] reasonable," it agreed with wife and found her proposed coverture fraction was appropriate. The circuit court found that the marital agreement did not specify the calculations in the "specific way" that husband contended was appropriate. The circuit court also noted that "pension plans increase in benefits over the years" and the various parts of husband's plans "just changed the manner in which the benefits [were] calculated." Husband countered that the new parts were actually "new benefits" that he received and should be considered his separate property under the agreement. Wife argued that husband could not testify about whether Parts B, C, and D were "new benefits" because it was "outside the scope of his knowledge." The circuit court found that while husband remained in the same job, his pension grew, and he and wife "enjoyed" the additional benefits; however, wife's benefit was restricted "to the period of time in which the marriage existed, which in this instance [was] artificially limited." The circuit court

also held that the parties would share the cost of the survivor benefit. The circuit court took the attorney fees requests under advisement.

The circuit court subsequently issued a "Memorandum Opinion and Order."[2] The circuit court interpreted the marital agreement to provide that husband's pension at Northrup Grumman would be divided using a coverture fraction. When the parties entered into the marital agreement, husband's pension plan was "in flux and did not present a circumstance where a 'frozen benefit rule' could be applied." The circuit court took judicial notice that the frozen benefit rule used in dividing military retirement "came about" several years after the parties entered the marital agreement. *See* 10 U.S.C. § 1408(a)(4)(B). Furthermore, the circuit court found that husband failed to present evidence from an expert "who could opine to precise details about the plan," and while husband testified about the selections he made when he retired, the circuit court noted that "only" the employer could have explained the differences in the plans. In addition, expert testimony would have been required to "explain frozen benefit plans in the private sector."

After offsetting husband's share of wife's pension, the circuit court calculated that wife's monthly gross share would be $1,883.70, which included a "reduction for a 100% joint survivor annuity" that came "off the top." The circuit court further held that husband owed wife $56,511, representing "Northup Grumman pension payments due to [wife] from September, 2019 through December, 2022 (a total of $75,348) reduced by 25% to account for the taxes paid on this amount by" husband.

In addition, the circuit court found that the marital agreement provided that the prevailing party would be entitled to an award of attorney fees. The circuit court determined that wife was

---

[2] In addition to the issue of husband's pension, the parties asked the circuit court to resolve an issue regarding the parties' agreement about a certain debt, but that ruling was not challenged so we do not address it.

the prevailing party because she "prevailed in her interpretation of the formula to be applied in dividing the pension and the sharing of the costs for survivor benefits." The circuit court awarded wife $48,075.66 for her attorney fees. The circuit court ordered husband to pay the pension arrears and attorney fees "not later than 14 days after the closing on the sale of" certain real estate, "or January 10, 2023, whichever first occurs."

The circuit court subsequently entered a qualified domestic relations order and a final order of divorce, which incorporated the marital agreement and the "Memorandum Opinion and Order."[3] Husband moved to reconsider the ruling regarding his pension, which the circuit court denied based on a lack of jurisdiction.[4]

Husband timely noted his appeal to this Court. Thereafter, on January 10, 2023, husband paid the pension arrears and attorney fee award in full.

ANALYSIS

"[A]ll trial court rulings come to an appellate court with a presumption of correctness." *Sobol v. Sobol*, 74 Va. App. 252, 272 (2022) (alteration in original) (quoting *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019)). "[T]his Court reviews the circuit court's 'interpretation of the parties' agreement *de novo.*'" *Price v. Peek*, 72 Va. App. 640, 646 (2020) (quoting *Jones v. Gates*, 68 Va. App. 100, 105 (2017)). An appellate court is "not bound by the trial court's conclusions as

---

[3] On October 20, 2022, the circuit court "mistakenly" entered a final order of divorce "contrary to the intent of the parties to delay entry of the Final Order until December of 2022." On November 7, 2022, the circuit court vacated the October 2022 order; it entered a final order of divorce on December 7, 2022, in accordance with the parties' request.

[4] The circuit court found that husband had filed his motion to reconsider 20 days after the entry of the final order of divorce, without seeking a suspension order or requesting that the circuit court "take immediate action." The circuit court found that "by the time the motion came to the [c]ourt's attention," it had lost jurisdiction to suspend, modify, or vacate the final order of divorce because more than 21 days had passed since the entry of the order. *See* Rule 1:1(a).

to the construction of the disputed provisions." *Jones*, 68 Va. App. at 105 (quoting *Smith v. Smith*, 3 Va. App. 510, 513 (1986)).

## I.  Husband's pension

Husband argues that the circuit court erred in interpreting the parties' marital agreement for the division of his pension benefits and applying wife's proposed coverture fraction.[5]  When interpreting an agreement, "the court must determine 'the intent of the parties and the meaning of the language'" by examining "'the entire instrument, giving full effect to the words the parties actually used.'"  *Price*, 72 Va. App. at 646 (quoting *Jones*, 68 Va. App. at 106).

Paragraph 7 of the parties' marital agreement provided for the division of their retirement assets.  Paragraph 7(a) defined "[p]revious retirement assets" as "[a]ll marital retirement assets and/or benefits in the name of either party as of October 6, 2000."  Paragraph 7(b) defined "[n]ew retirement assets" as "[a]ny retirement assets and/or benefits which are earned by either party after October 6, 2000."  The parties agreed to divide equally the previous retirement assets accrued between May 24, 1980 and October 6, 2000, but new retirement assets would be the sole and separate property of the party who earned them.

While working at Northrop Grumman, husband earned a pension that was composed of several parts.  Part A was based on the plan in place before June 30, 2003.[6]  Then, husband had a choice between Part B or C, which was in place from July 1, 2003 through June 30, 2008.  Finally, Part D applied as of July 1, 2008.

---

[5] Husband also suggests that the circuit court found the marital agreement to be ambiguous and challenges that finding on appeal.  Wife asserts that the circuit court made no such ruling.  Regardless, "Rule 5A:20(c) requires us to hold that this issue is waived because it is not part of appellant's assignment of error."  *Fox v. Fox*, 61 Va. App. 185, 202 (2012).

[6] Part A had three subparts, divided between July 1979 and 1992, 1993 and 1994, and 1995 and June 2003.

The parties agree that a coverture fraction should be applied to the division of husband's pension; they disagree as to whether it applies to the aggregate or subparts of the pension. Husband argued that wife was entitled only to the marital portion of Part A because that was the only part in effect as of October 6, 2000; therefore, the coverture fraction should be applied to the individual parts of the pension. He asserted that each subpart was like a different pension plan and had to be divided separately. Husband emphasized that wife was "only entitled to 50% of the portion of his retirement benefits received between May 24, 1980 to October 6, 2000," and not any portion of Parts C or D. Wife, on the other hand, argued that the coverture fraction should be applied to the total monthly annuity. She contends that the numerator of the coverture fraction should be the number of months between the date of marriage, May 24, 1980, and the date in their agreement, October 6, 2000. The denominator of the coverture fraction, according to wife, should be the total number of months of husband's employment.

After hearing the parties' evidence and arguments, the circuit court agreed with wife and applied her proposed coverture fraction to divide husband's pension. Based on the "plain language" of the marital agreement, the circuit court found that the agreement did not reflect the pension "being calculated in that specific way in which the husband does it." "[A] court is limited to the words actually contained in the agreement and 'may not "read into [it] language"' that changes its meaning." *Price*, 72 Va. App. at 646 (second alteration in original) (quoting *Jones*, 68 Va. App. at 106). The circuit court explained that it interpreted the marital agreement "at the time it was executed and not through the clarifying lenses of hindsight" and found that "the agreement governed the pension from the one employer from whom the pension is paid." Although there were different parts, husband was receiving his pension "from a single source – his former employer." Husband's proposed calculation would have allowed the parties to value his pension at the time they entered the agreement, but they did not do so. The circuit court found that there was "no evidence"

that the parties intended for the "particular division" that husband now advanced. We agree with the circuit court. The marital agreement did not include the specific formula that husband proposes, and we will not add language to the agreement to accomplish husband's suggested division. *Price*, 72 Va. App. at 646.

When the parties executed the marital agreement, it was "well established" that the marital portion of a pension plan was calculated based on "a fraction, the numerator of which represents the total time the pensioner is employed during the parties' marriage, and the denominator of which represents the total time the pensioner is employed through the date of retirement." *Mann v. Mann*, 22 Va. App. 459, 464 (1996). The circuit court found that husband's proposed formula mirrored the frozen benefit rule, which was established in December 2016 to divide military retirement. *See* 10 U.S.C. § 1408(a)(4)(B). "One of the basic rules of construction of contracts is that the law in force at the date of making a contract determines the rights of the parties under the contract." *Everett v. Carome*, 65 Va. App. 177, 187 (2015) (quoting *Goldin v. Goldin*, 34 Va. App. 95, 105 (2000)); *Gazale v. Gazale*, 219 Va. 775, 777 (1979) ("[C]ontractual rights and duties are controlled by the law in effect at the time the contract was executed."); *Paul v. Paul*, 214 Va. 651, 653 (1974) ("The law effective when the contract is made is as much a part of the contract as if incorporated therein."). The fact that "this concept" of the frozen benefit rule did not exist when the parties entered into the agreement further supported the circuit court's ruling that the parties did not intend to divide husband's pension as he proposed at trial. Accordingly, the circuit court did not err in its interpretation of the parties' marital agreement and the division of husband's pension.

## II. Voluntary payment doctrine

Husband contends that the circuit court erred in finding that he owed wife $56,511 for the pension payments received from the date of separation to the date of the trial, less the taxes he

paid.  He also asserts that the circuit court erred in finding that wife was the prevailing party and ordering him to pay $48,075.66 of wife's attorney fees.

After he noted his appeal of the circuit court's ruling, husband paid wife the amounts owed for the pension arrears and attorney fees.  Wife subsequently moved to dismiss, arguing that husband waived his arguments by voluntarily paying the amounts owed.  Wife emphasized that she had not tried to execute the judgment against husband and he had not sought to stay the judgment.

"Voluntary payment of a judgment deprives the payor of the right of appeal."  *Sheehy v. Williams*, 299 Va. 274, 279 (2020) (quoting *Citizens Bank & Tr. Co. v. Crewe Factory Sales Corp.*, 254 Va. 355, 355 (1997)).  "In the appellate context, the voluntary-payment doctrine recognizes that at some point, reviewing courts should declare litigation to be at an end when the litigants themselves — by their own voluntary actions — have effectively ended it."  *Id.*  "The premise of this doctrine was that, absent a showing of fraud or other misconduct, a claimant could not demand that a court *return* money to him that he had *voluntarily* paid to another."  *Id.* at 278; *see also Nestler v. Scarabelli*, 77 Va. App. 440, 465-66 (2023) (same).

All "payments are presumed to be voluntary until the contrary is made to appear."  *D.R. Horton, Inc. v. Bd. of Supervisors for the Cnty. of Warren*, 285 Va. 467, 472 (2013) (quoting *Town of Phoebus v. Manhattan Soc. Club*, 105 Va. 144, 149 (1906)).  "If 'the law would not compel him to make' the payment, the party making the payment has made it voluntarily."  *Sheehy*, 299 Va. at 279 (quoting Kent Sinclair, *Sinclair on Virginia Remedies* § 9-2, at 9-5 (5th ed. 2016)).  In other words, "absent a showing of fraud or other tortious conduct by a judgment creditor, a payment of a civil judgment . . . made by . . . a judgment debtor . . . becomes involuntary only when the payment is made after the judgment creditor has initiated execution proceedings."  *Id.* at 280.

- 10 -

In response to wife's motion to dismiss, husband argued that the payments were not voluntary because the circuit court had the authority to find him in contempt for failing to comply with its court order to pay the amounts owed by January 10, 2023. Nonetheless, no contempt proceedings were pending when husband paid the judgment. A party must show that there was an "immediate and urgent necessity" for making a payment to prove that it was involuntary. *D.R. Horton, Inc.*, 285 Va. at 474 (quoting *Barrow v. Cnty. of Prince Edward*, 121 Va. 1, 2 (1917)). Husband's attempt to avoid a possible contempt finding, when no such proceeding had commenced, is insufficient to prove an "immediate and urgent necessity." *Id.* Accordingly, husband waived his third and fourth assignments of error.[7] *Sheehy*, 299 Va. at 279.

### III. Appellate attorney fees

Wife requests an award of her attorney fees and costs incurred on appeal.[8] "Whether a contract entitles the prevailing party to attorney fees is a question of law that we review 'de novo.'" *Worsham v. Worsham*, 74 Va. App. 151, 178 (2022) (quoting *Online Res. Corp. v. Lawlor*, 285 Va. 40, 61 (2013)). Rule 5A:30(b)(2)(B) requires us to look to the "terms of a contract or stipulation" between the parties to determine whether to award fees. *See Allen v. Allen*, 66 Va. App. 586, 603 (2016) (considering the parties' post-nuptial agreement to determine whether to award appellate attorney fees). If an agreement "contains a provision awarding attorney's fees, the court must follow the terms of that agreement, to the extent allowable by law." *Jones*, 68 Va. App. at 106.

Paragraph 11(b) of the marital agreement provided that "[i]n the event either party breaches this agreement and a judicial decision is entered in favor of the other party, the party

---

[7] Because of our ruling herein, we deny wife's motion to dismiss.

[8] Husband sought an award of attorney fees and costs incurred in response to the motion to dismiss, but not his opening or reply briefs. Because husband did not prevail, we deny his request.

who does not prevail agrees to pay all of the counsel fees and other costs incurred in the matter by the prevailing party." Here, because wife is the prevailing party, she is entitled to an award of her appellate attorney fees and costs under the terms of the marital agreement. Thus, we remand for the circuit court to set a reasonable award of attorney fees incurred by wife in this appeal. Rule 5A:30(b).

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's interpretation of the marital agreement and the division of husband's pension. We further find that husband waived his third and fourth assignments of error by voluntarily paying the pension arrears and attorney fees. We remand this case to the circuit court for determination and award of the appropriate appellate attorney fees, which also should include any additional attorney fees incurred at the remand hearing.

*Affirmed and remanded.*